Helen I. Zeldes (State Bar No. 220051)
*hzeldes@sshhzlaw.com*
Joshua A. Fields (State Bar No. 242938)
*jfields@sshhzlaw.com*
Aya Dardari (State Bar No. 344039)
*adardari@sshhzlaw.com*
**SCHONBRUN SEPLOW**
**HARRIS HOFFMAN & ZELDES, LLP**
501 West Broadway, Suite 800
San Diego, California 92101
Telephone: (619) 400-4990

Justin Hewgill (SBN 259528)
**HEWGILL COBB & LOCKARD, APC**
1620 Fifth Avenue, Suite 325
San Diego, Ca 92101
Tel: 619-432-2520 / Fax: 619-377-6026
contact@hcl-lawfirm.com

*Counsel for Plaintiff CHERISHA LOVEJOY*
*and the Proposed Class.*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SAN DIEGO DIVISION

| | |
|---|---|
| CHERISHA LOVEJOY, *an individual, on behalf of herself and all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> TRANSDEV SERVICES, INC, *and* DOES 1 *to* 10, <br><br> Defendants. | Case No. 3:23-cv-00380-AJB-MMP <br><br> **PLAINTIFF CHERISHA LOVEJOY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** <br><br> Date: December 5, 2024 <br> Time: 2:00 p.m. <br> Place: Courtroom 5B <br> Judge: Hon. Anthony J. Battaglia <br><br> Complaint filed: February 27, 2023 <br> Trial date: Not set |

# TABLE OF CONTENTS

I.   INTRODUCTION ......................................................................................1

II.  SUMMARY OF COMMON CLASSWIDE EVIDENCE............................2

III. CLASS CERTIFICATION IS WARRANTED HERE ...............................7

   A.   Legal Standard and Class Definition....................................................7

   B.   The Class Satisfies Federal Rule of Civil Procedure 23(a)..................9

      i.   The Proposed Class Is Sufficiently Numerous ...........................9

      ii.  Commonality Is Met ....................................................................9

      iii. Typicality Is Met........................................................................11

      iv.  Lovejoy and Her Counsel Are Adequate ...................................11

   C.   The Class Satisfies Rule 23(b)(3)......................................................12

      i.   Common Issues Predominate......................................................12

         a.   Plaintiff's Off the Clock Claim Presents Common Questions Which Predominate Over Individualized Issues ................................................................13

         b.   Plaintiff's Rest Break Claim Presents Common Questions Which Predominate Over Individualized Issues ................................................................15

         c.   Plaintiff's Meal Break Claim Presents Common Questions Which Predominate Over Individualized Issues ................................................................18

         d.   Plaintiff's Split Shift Claim Presents Common Questions Which Predominate Over Individualized Issues ................................................................19

         e.   Plaintiff's Derivative Wage Statement and Waiting Time Claims Present Common Questions Which Predominate Over Individualized Issues..............20

      ii.  Lovejoy's Damages Model for Calculating Classwide Damages is Appropriate........................................................................23

      iii. A Class Action Is Superior to Alternative Methods of Adjudication and Is Manageable ...............................................24

IV.  CONCLUSION.......................................................................................25

1

# TABLE OF AUTHORITIES

2

_Federal Cases_                                                                                                      _Page(s)_

3

*A. B. v. Hawaii State Dep't of Educ.*,

4
   30 F.4th 828 (9th Cir. 2022) ........................................................................ 9

5

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,

6
   568 U.S. 455 (2013)  ............................................................................. 13, 8

7

*Antemate v. Estenson Logistics, LLC, No. CV 14-5255 DSF*

8
   (RZx), 2015 U.S. Dist. LEXIS 83543 (C.D. Cal. June 15, 2015) ......................... 17, 18

9

*Barragan v. Home Depot U.S.A., Inc., No. 19-cv-01766-AJB-AGS*,

   2022 U.S. Dist. LEXIS 8975 (S.D. Cal. Jan. 18, 2022) ................................ 8

10

*Bowerman v. Field Asset Servs., Inc.*,

11
   242 F. Supp. 3d 910 (N.D. Cal. 2017) ................................................ 25

12

*Boyd v. Bank of Am. Corp.*,

13
   109 F. Supp. 3d 1273 (C.D. Cal. May 6, 2015) .................................... 17

14

*Braun v. Safeco Ins. Co. of Am.*,

15
   2014 WL 9883831 (C.D. Cal. Nov. 7, 2014) ...................................... 14

16

*Brewer v. Gen. Nutrition Corp., No. 11-CV-3587 YGR*,

   2014 U.S. Dist. LEXIS 159380 (N.D. Cal. Nov. 12, 2014) ...................... 17

17

*Briseno v. ConAgra Foods, Inc.*,

18
   844 F.3d 1121 (9th Cir. 2017) ......................................................... 25

19

*Campbell v. Vitran Express Inc., No. CV 11-5029 RGK*

20
   (SHx), 2015 U.S. Dist. LEXIS 155512 (C.D. Cal. Nov. 12, 2015) ............ 19

21

*Castillo v. Bank of America*,

22
   980 F.3d 723 (9th Cir. 2020) ......................................................... 24

23

*Comcast Corp. v. Behrend*,

24
   569 U.S. 27 (2013) ...................................................................... 23

25

*Dilts v. Penske Logistics, LLC*,

   267 F.R.D. 625 (S.D. Cal. Apr. 26, 2010)......................................... 10

26

*Ellis v. Costco Wholesale Corp.*,

27
   657 F.3d 970 (9th Cir. 2011) ......................................................... 12

28

1

**TABLE OF AUTHORITIES – CONT'D**

2

<u>*Federal Cases*</u> *- Continued*                                                                 *Page(s)*

3

4

*Escano v. Kindred Healthcare Operating Co., Inc.,* No. CV 09-04778 DDP
(CTx), 2013 WL 816146 at *11-13 (C.D. Cal., March 5, 2013) ......................... 22-23

5

6

*Flores v. Dart Container Corp.,* No. 2:19-cv-0083 WBS JDP,
2021 U.S. Dist. LEXIS 6897 ............................................................................... 22

7

8

*Gomez v. J. Jacobo Farm Labor Contr., Inc.,* No. 1:
15-cv-01489-AWI-BAM, 2020 U.S. Dist. LEXIS 69130 (E.D. Cal. Apr. 20, 2020)   23

9

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ........................................................................... 11

10

11

*Harp v. Starline Tours of Hollywood, Inc.,* No. 2:14-cv-07704-CAS
(Ex), 2015 U.S. Dist. LEXIS 99138 (C.D. Cal. July 27, 2015) ............................ 18-19

12

13

*Jimenez v. Allstate Ins. Co.,*
765 F.3d 1161 (9th Cir. 2014) ........................................................................... 14

14

15

*Johnson v. City of Grants Pass,*
72 F.4th 868 (9th Cir. 2023) ...................................................................... 7, 9, 11

16

*Kamar v. Radio Shack Corp.,*
254 F.R.D. 387 (C.D. Cal. 2008) ....................................................................... 25

17

18

*Kamar v. Radio Shack Corp.,*
375 Fed. Appx. 734 (9th Cir. 2010) ................................................................... 20

19

20

*Khasin v. R.C. Bigelow, Inc.,* No. 12-cv-2204-WHO,
2016 U.S. Dist. LEXIS 42735 (N.D. Cal. Mar. 29, 2016) .................................... 23-24

21

22

*Krueger v. Wyeth, Inc.,*
310 F.R.D. 468 (S.D. Cal. 2015) ........................................................................ 13

23

24

*Levya v. Medline Indus. Inc.,*
716 F.3d 510 (9th Cir. 2013) ....................................................................... 18, 24

25

*Martin v. SYSCO Corp.,*
325 F.R.D. 343 (E.D. Cal. Apr. 19, 2018) ........................................................... 11

26

27

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC,*
31 F.4th 651 (9th Cir. 2022)......................................................................... 137, 9, 13

28

1

# TABLE OF AUTHORITIES – CONT'D

2

*Federal Cases* - Continued                                                    *Page(s)*

3

4

*Owino v. CoreCivic, Inc.*,
    60 F.4th 437 (9th Cir. 2022) ....................................................... 12

5

6

*Parker v. Cherne Contr. Corp., No. 18-cv-01912-HSG*,
    2020 U.S. Dist. LEXIS 218187 (N.D. Cal. Nov. 20, 2020) ....................................... 22

7

8

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ..................................................... 11

9

10

*Ruiz v. XPO Last Mile, Inc., No. 5cv*
    2125 JLS (KSC), 2016 U.S. Dist. LEXIS 152095 (S.D. Cal. Feb. 1, 2016) ........ 15, 18

11

*Saecho v. Landry's, Inc.*,
    2016 U.S. Dist. LEXIS 33409 at *19-24 (N.D. Cal. Mar. 15, 2016) ......................... 20

12

13

*Sali v. Corona Reg'l Med. Ctr.*,
    909 F.3d 996 (9th Cir. 2018) ...................................................... 8

14

15

*Schulz v. Qualxserv, LLC, No. 09-CV-17-AJB*
    (MDD), 09-CV-2081, 2012 U.S. Dist. LEXIS 58561 (S.D. Cal. Apr. 26, 2012) . 10, 14

16

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ....................................................... 1312, 13

17

18

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) .................................................. 24-25

19

20

*Vaquero v. Ashley Furniture Indus. Inc.*,
    824 F.3d 1150 (9th Cir. 2016) ..................................................... 24

21

22

*Vazquez v. Kraft Heinz Foods Co., No. 16-cv-2749-WQH-BLM*,
    2018 U.S. Dist. LEXIS 173784 (S.D. Cal. Oct. 9, 2018) ......................................... 23

23

24

*Wal-Mart Stores, Inc.*,
    564 U.S. ........................................................................... 20, 9

25

*Yokoyama v. Midland Nat. Life Ins. Co.*,
    594 F.3d 1087 (9th Cir. 2010) ..................................................... 24

26

27

28

# TABLE OF AUTHORITIES – CONT'D

*State Cases* *Page(s)*

*Alberts v. Aurora Behavioral Health Care*,
  241 Cal.App.4th 388 (2015) ....................................................... 17

*Amaral v. Cintas Corp. No. 2*,
  163 Cal. App. 4th 1157 ............................................................ 23

*Augustus v. ABM Security Services, Inc.*,
  2 Cal. 5th 257 (2016) ......................................................... 15, 16

*Jaimez v. Daiohs USA, Inc.*,
  181 Cal.App.4th 1286 (2010) ............................................... 21, 22

*Jones v. Farmers Ins. Exch*
  (2013) 221 Cal.App.4th 986 ...................................................... 15

*Lubin v. The Wackenhut Corp.*,
  5 Cal.App.5th 926 (2016) ......................................................... 22

*Morillion v. Royal Packing Co.*,
  22 Cal. 4th 575 (2000) ............................................................ 13

*Murphy v. Kenneth Cole Productions, Inc.*,
  40 Cal. 4th 1094 (2007) ........................................................... 21

*Naranjo v. Spectrum Security Services, Inc.*,
  13 Cal. 5th 93 (2022) .............................................................. 23

*State Statutes*

California Labor Code § 226 ........................................... 8, 10, 21, 22

California Labor Code § 558 ............................................................. 8

California Labor Code §§ 200, 210, 510, 515, 558, 1194, 1194.2 ................. 8

California Labor Code §§ 201 and 202 ............................................... 8

California Labor Code §§ 226.7 and 512 ................................... 8, 15, 18

Labor Code § 226.7 ..................................................................... 21

Labor Code § 512 ...................................................................... 18

Labor Code §§ 226 ..................................................................... 21

Labor Code §§ 510, 1194 ............................................................. 14

1

**TABLE OF AUTHORITIES – CONT'D**

2

<u>*Other*</u>                                                                                      *Page(s)*

3

Cal. Code Regs., tit. 8, §11040 ................................................................... 19, 20

4

Federal Rules of Civil Procedure, Rules 23 ............................................. *passim*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Cherisha Lovejoy respectfully submits this Memorandum of Points and Authorities in Support of her Motion for Class Certification.

# I.    INTRODUCTION

This is a straightforward employment case that is  well-suited for class certification. Plaintiff Cherisha Lovejoy ("Lovejoy" or "Plaintiff") worked as a bus driver/operator for Defendant Transdev Services, Inc. ("Transdev") – the largest private operator of multiple modes of public transportation in the United States -- in California from August 2018 through December 2021. Transdev systematically fails to record actual time worked and compensate its bus drivers/operators, including Lovejoy, for all hours worked by: (1) only paying estimates of time worked according to aspirational bus route schedules called "paddles" or "manifests," (2) failing to provide proper meal and rest breaks in accordance with California law, (3) failing to pay split-shift premiums, (4) failing to provide accurate wage statements, and (4) failing to pay all wages owed upon termination. Ms. Lovejoy brings this action to, among other things, recover unpaid wages on behalf of herself and the putative class against Transdev, for violations of California's Labor Code.

Class certification is appropriate here because Lovejoy's claims and evidence readily meet *Federal Rules of Civil Procedure*, Rules 23(a) and (b)(3)'s threshold requirements and because the claims are more efficiently tried together. Lovejoy's claims are typical of the Class, common issues predominate, the Class is numerous, and Lovejoy and her Counsel have and will continue to fairly and adequately represent the interests of the Class. Class litigation is superior to individual actions as Transdev's conduct has affected thousands of employees whose individual damages would be dwarfed by the costs of pursuing individual cases. Class members are identifiable through Transdev's records. The damages at issue are easily calculated on a classwide basis by comparing the wages paid to employees' time and other electronic records. As set forth more fully below, because all of the requisites of Rules 23(a) and (b)(3) have been met, Lovejoy respectfully submits that the Court should grant her Motion for Class Certification in its entirety.

## II.    SUMMARY OF COMMON CLASSWIDE EVIDENCE

Transdev operates a nationwide transportation business, including across the state of California, in which it contracts with municipal transportation authorities to operate buses and trains. This action is brought on behalf of all bus driver employees who drove routes with stops in California from February 27, 2019 to the present (the "Class Period"). Transdev fails to fulfill its obligation to record actual time worked by Plaintiff and bus driver class members. *See* the Deposition of Andrew Krueger ("Krueger Deposition") at 27:21-29:9, 31:19-34:5, 34:6-35:10, 53:24-54:15 53:24-54:15, 54:16-55:7, and 84:19-10 submitted as exhibit 3 to the Declaration of Justin Hewgill in Support of Plaintiff Cherisha Lovejoy's Motion for Class Certification ("Hewgill Decl."). Notably, bus driver employees do not clock in and out. Instead, Transdev has a dispatcher handle clock in/clock out procedures for all employees, utilizing a scheme where "theoretical time" each bus driver is estimated to work is pre-loaded into what they refer to as "paddles" which are input into Transdev's time keeping system, the Veolia Dispatch System (also known as the Visual Dispatch System or "VDS"). Hewgill Decl. ¶ 19, Ex. 3, Krueger Deposition 27:21-29:9, 31:19-34:5, 34:6-35:10, 53:24-54:15 53:24-54:15, 54:16-55:7, and 84:19-10. Transdev's VDS Handbook expressly states that the VDS system's "Check In/Check Out" ("CICO") is NOT a time keeping system (Hewgill Decl. ¶ 26 Ex. 10 at TSI.C.Lovejoy_0117007), putting the burden on the employee. Dispatch employees across locations in California are allegedly assigned the task of correcting hours to reflect what actually occurs during the workday but systematically do not do so.  Hewgill Decl., ¶ 18, Ex. 2. Diaz Depo., 29:16-31:2 (testifying that dispatchers play the same role across locations in Northern and Southern California). Class members widely report working unpaid time before and after the preset "theoretical" paddle time; having scheduled meal breaks on paddles be deducted from time worked even though Class members are often forced to miss or be late to their meal breaks; missing rest breaks altogether; not being paid meal and rest break premiums; and not being paid split shift premiums. *See* Compendium of Putative Class Member Declarations ("Class Member Decs.").

After extensive meet and confers with counsel for Transdev, and the Parties agreed to a 20% data sampling production by Transdev related to putative Class member payroll records, time records, and paddles for purposes of this Motion. ECF No. 18. Pursuant to Plaintiff's discovery requests and the Parties' sampling agreement, Transdev produced over 116,000 pages of documents, including sampling of putative Class members' pay and time records, and paddles, which describe estimated hours and work for bus driver Class members during the Class Period. Hewgill Decl., ¶ 11.[1]

**Off the Clock Time**:

***Pre-shift***. Bus drivers do not have enough time to prepare their buses prior to shifts and to start their designated route on time.[2] Specifically, Transdev only provides drivers 15 minutes to do a "pre-check" of their bus.[3] However, a pre-check done correctly takes roughly 25 minutes.[4] Accordingly, many bus drivers arrive on-site early and prepare their bus prior to the scheduled paddle time.[5] Those bus drivers check-in with dispatch early, and go to do their pre-check early, but are not paid for the early time.[6]

Additionally, many paddles require drivers to meet buses which are already in route. This means taking bus, which Transdev operates, and runs on a rotating basis. The time allotted for this travel by Transdev is insufficient.[7] Accordingly, class members arrive

---

[1] During an August 5, 2024 30(b)(6) deposition on Transdev's time keeping system, Transdev's corporate witness, Mr. Krueger, made clear that a report can be run at the push of a button that shows every instance in which a record of time worked is altered from the assumed paddle time. Hewgill Decl., ¶ 19, Ex. 3, Krueger Deposition 44:1-45:22. Transdev agreed to produce this report for the employees who were part of the Parties' sampling agreement, but has, as of the time of the filing of this Motion, failed to do so. Hewgill Decl., ¶ 14. An Informal Discovery Conference is scheduled with Magistrate Judge Pettit to resolve this dispute. Hewgill Decl., ¶ 14.

[2] Class Member Decs. at ¶5; Lovejoy Decl. ¶4.

[3] Class Member Decs. #s 3 and 18 at ¶5, Decl. #13 at ¶4; Lovejoy Decl. ¶4.

[4] Class Member Decs., #1, 3, and 18 at ¶5; Lovejoy Decl. ¶4.

[5] Class Member Decs. at ¶5; Lovejoy Decl. ¶4.

[6] Class Member Decs., #s 1, 3, 18 at ¶5, Decl. #13 at ¶4; Lovejoy Decl. ¶4

[7] Class Member Decs., at ¶5; Lovejoy Decl. ¶4.

1  early, check in with dispatch and then go on the trip to their buses early.[8]  Time which is

2  off the clock and they are not compensated for.

3  *During meal breaks*. Additionally, bus drivers' scheduled meal breaks are

4  automatically deducted from their work time since meal breaks are preloaded as non-work

5  time into the VDS time keeping system according to the scheduled meal break times listed

6  on paddles. Hewgill Decl., ¶ 19, Ex. 3, Krueger Deposition 34:6-35:10, 36:16-37:13,

7  53:24-54:15, and 54:16-55:7. Drivers are regularly late to meal breaks.[9] The extra time the

8  drivers are working when late to their meal breaks is unpaid time.

9  Transdev will likely argue that drivers are supposed to call dispatch if they are late

10  for their meal break and that dispatch will adjust their time accordingly. However,

11  Transdev has been unable to produce any document showing that such a policy was

12  communicated to bus drivers. Hewgill Decl. ¶ 28. Drivers are allegedly instructed to submit

13  "exception forms" if they miss their meal breaks (Hewgill Decl. ¶ 21, Ex. 5), yet Class

14  members testified that they were never informed that they should use exception forms.[10]

15  Moreover, Transdev's employee manual does not provide this instruction to employees

16  and contains no rest or meal break policy at all.  In the midst of the August 5, 2024 30(b)(6)

17  deposition, Transdev's counsel produced an exemplar of an exception form. However, as

18  can be seen on the exemplar of the exception form, to the degree they were actually made

19  available to drivers, the form only calls for drivers to use the form if they are not able to

20  take a meal break of 30 minutes. Meal breaks aspirationally scheduled on paddles during

21  the Class period varied from 30 minutes to over an hour. Hewgill Decl. ¶ 20, 24, Exs. 4,8.

22  At best, this indicates that Transdev only pays time when a bus driver is (1) sufficiently

23  late such that they cannot take a full 30-minute meal break and (2) the driver calls that into

24  dispatch. Class members describe regularly being late to meal breaks but still getting a full

25

26  _____

[8] Class Member Decs., #1, 3, 18 at ¶5; Decl. #13 at ¶4; Lovejoy Decl. ¶4.

27  [9] Class Member Decs, #s 12, 13 at ¶5; #s 1, 3, 8, 14, 18 at ¶6; #s 2, 5, 6, 7, 9-11, 15-17 at ¶7; #4 at ¶8; Lovejoy Decl. ¶5.

28  [10] Class Member Decs, #s 12-13 at ¶5; #s 1, 3, 8, 14, 18 at ¶6; #s 2, 5, 7, 10, 11, 15-17 at ¶7; # 4 at ¶8,

Case No. 23cv380

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION    4

1  30-minute break and therefore having no reason to call in or file an exception form, and
2  thereby not being paid for the time they were late to their theoretically scheduled meal
3  breaks.[11]

4      ***Post-Shift***. Bus drivers regularly come into the bus depos where they start their days
5  late (or after the paddle time) because of traffic conditions or because the process of taking
6  a company car or tram back to the depo takes longer than the paddle accounts for.[12]
7  Transdev does not compensate drivers for this post-paddle work time.

8  **Rest Breaks**:

9      Transdev does not provide rest breaks to Class members. It provides "opportunity
10 breaks," which are theoretical dead times on paddles that allow buses to re-synch with the
11 routes that the buses are on. Lovejoy Decl. ¶6. If the bus driver's route is running on time,
12 they can also take a rest break during the scheduled opportunity break. Id. Class members
13 describe regularly not being able to take their rest breaks.[13]

14     Class members are structurally unable to take adequate rest breaks. This is because
15 they are not allowed to leave buses unattended when there are passengers on the bus. Diaz
16 Depo., 63:5-8, 63:9-15. There is no policy written or otherwise that communicates to bus
17 driver class members explaining that they are not off duty if they have to spend their breaks
18 clearing their buses. Lovejoy Decl. ¶6 Many passengers do not want to leave th.e bus, or
19 are disabled and clearing the bus in a respectful manner is very time consuming. Id. As
20 such, whatever "opportunity breaks", class members did get, they were not relieved of all
21 duty.

22     It is painfully clear that being relieved of all duty – as required by law to constitute
23 a valid break -- is impossible during so-called "opportunity breaks" for class members who

24

25 [11] Class Member Decs., #s 12-13 at ¶5; #s 1, 8, 14, 18 at ¶6; #s 2, 5-7, 9-11, 15-17 at ¶7; #4
26 at ¶8;  Lovejoy Decl. at ¶5
   [12] Class Member Decs. at ¶5
27 [13] Class Member Decs., # 3 ¶7; #s12-13 at ¶6-¶7; #s1, 8, 14, 18 at ¶7-¶8; #s 2, 5, 7, 9, 10-
28 11, 15-17 at ¶8-¶9; #s 4, 6 at ¶9-¶10; #12 at ¶6-¶7,

1  drove the many thousands of routes in which paddles called for opportunity breaks of only

2  ten minutes. This is because even if the bus driver took it upon him or herself to clear the

3  bus, "opportunity breaks" do not build in any extra time for clearing the bus of passengers.

4  Krueger Deposition 65:10-66:16. Certainly, clearing a bus takes some cognizable amount

5  of time. *See* Lovejoy Decl. at ¶6 (Ms. Lovejoy describes clearing the bus taking several

6  minutes under good conditions.) Even in perfect conditions, class members could not get

7  legally compliant ten-minute breaks relieved of all duty when their opportunity breaks are

8  scheduled for only ten minutes. Plaintiff's counsel's review of the paddles produced by

9  Transdev pursuant to the Parties' 20% sampling agreement reveals that there are 1,664

10  workdays where the only rest breaks given are 10 minutes. Hewgill Decl., ¶ 29.

11      **Meal Breaks**:

12      Class members describe not being able to take proper meal breaks due to buses being

13  late.[14] *See* Lovejoy Decl., ¶ 8.

14      Transdev will likely argue that when meal breaks are missed, and assuming the Class

15  member bus driver reports the missed break to dispatch or via the exception form, that

16  premium wages were paid. However, Class members state that they were not paid for

17  missed meal breaks.[15] Furthermore, Transdev's own records show thousands of instances

18  of meal breaks being less than 30 minutes, or after five or six hours, with no premium being

19  paid. Declaration of Heather H. Xitco in Support of Plaintiffs' Motion for Class

20  Certification and Appointment of Class Representatives and Class Counsel ("Xitco

21  Decl."), ¶ 14 (identifying 43,007 instances with no meal break within a 5-hour shift and

22  5,207 instances with a meal break of less than 30 minutes, accounting for 12% and 1% of

23  total shifts in the sample, respectively), ¶¶ 15-16 (identifying 33,276 of the 45,072 meal

24  period premiums owed for missed or short meal breaks within a 5-hour shift were unpaid,

25

26  [14] Class Member Decs.. 1 ¶7, Decl. 2 ¶11, Decl. 5 ¶11, Decl. 6 ¶12, Decl. 7 ¶11, Decl. 8
    ¶10, Decl. 9 ¶11, Decl. 10 ¶11, Decl. 11 ¶11, Decl. 12 ¶9, Decl. 13 ¶9, Decl. 14 ¶10, Decl.
27  15 ¶11, Decl. 16 ¶11, Decl. 17 ¶8, Decl. 18 ¶10.
    [15] Class Member Decs., Decl. 1 ¶6, Decl. 2 ¶7, Decl. 3 ¶6, Decl. 4 ¶8, Decl. 5 ¶7, Decl. 7
28  ¶7, Decl. 8 ¶6, Decl. 10 ¶7, Decl. 11 ¶7, Decl.12 ¶5, Decl. 13 ¶5, Decl. 14 ¶6, Decl. 15 ¶7,
    Decl. 16 ¶7, Decl. 17 ¶7, Decl. 18 ¶6.

accounting for 9% of shifts worked in the sample), ¶ 17 (identifying 17,800 total meal break violations, consisting of no meal breaks and meal breaks of less than 30 minutes after 6 hours, which accounts for 4% of shifts, and identifying 6,004 of the 11,796 meal period premiums owed for missed or short meal breaks within a 6+ hour shift were unpaid), ¶ 18 (identifying 887 instances where Class members who worked over 10 hours in a shift did not receive a second meal break).

**Split Shifts**:

Transdev admits it does not pay split-shift premiums. Hewgill Decl., ¶ 18, Ex. 2, Diaz Depo., 79:24-80:19. Plaintiff's expert, Heather H. Xitco, reviewed Transdev's records and found that 52,665 shifts, equivalent to 15% of total shifts, were worked in the sample with a break of two or more hours. Xitco Decl., ¶ 10. In instances where split shifts were worked, not a single split shift premium was paid. *Id*., ¶ 11.

## III.   CLASS CERTIFICATION IS WARRANTED HERE

### A.    Legal Standard and Class Definition

A class may be certified if it satisfies Rule 23(a)'s four prerequisites (numerosity, commonality, typicality, and adequacy of representation), as well as the requirements of at least one of the categories in Rule 23(b). *Johnson v. City of Grants Pass*, 72 F.4th 868, 885 (9th Cir. 2023). Lovejoy seeks certification under Rule 23(b)(3), which requires the court to find that common questions of law or fact predominate over any individual questions and that a class action is superior to other available methods for fair and efficient adjudication of the controversy. FED. R. CIV. P. 23(b)(3).

Plaintiff "must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022) ("*Olean*") (en banc). "Assessing these requirements involves 'rigorous analysis' of the evidence." *Johnson*, 72 F.4th at 885 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)). However, in recognition of plaintiffs' limited access to proof at early stages of a proceeding, the Ninth Circuit has cautioned that the "rigorous analysis"

1    requirement does not mean the court should conduct a "mini-trial," and the proof presented

2    in support of class certification need not be admissible evidence. *Sali v. Corona Reg'l Med.*

3    *Ctr.*, 909 F.3d 996, 1004-07 (9th Cir. 2018). "Limiting class-certification-stage proof to

4    admissible evidence risks terminating actions before a putative class may gather crucial

5    admissible evidence." *Id.* at 1004. Furthermore, "[m]erits questions may be considered . .

6    . only to the extent . . . that they are relevant to determining whether the Rule 23

7    prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans &*

8    *Tr. Funds*, 568 U.S. 455, 466 (2013) ("*Amgen*").

9         A class definition must allow the court to readily identify the class members by

10   reference to objective criteria. *Barragan v. Home Depot U.S.A., Inc.*, No. 19-cv-01766-

11   AJB-AGS, 2022 U.S. Dist. LEXIS 8975, *6 (S.D. Cal. Jan. 18, 2022) (Battaglia, J.).

12   Lovejoy seeks certification of the following class under Rules 23(a) and (b)(3) against

13   Transdev for failure to pay all regular, minimum, and overtime wages in violation of

14   California Labor Code §§ 200, 210, 510, 515, 558, 1194, 1194.2; failure to pay split shift

15   wages in violation of California Labor Code § 558 and IWC Wage Order 9 § 4(c); failure

16   to provide meal periods in violation of California Labor Code §§ 226.7 and 512; failure to

17   provide rest periods in violation of California Labor Code § 226.7; failure to provide

18   accurate itemized wage statements in violation of California Labor Code § 226; failure to

19   timely pay wages due in violation of California Labor Code §§ 201 and 202;[16]

20         All current and former Bus Driver/Operator employees of Transdev Services,
21         Inc. who drove routes with stops in California during the period from February
22         27, 2019 through the present ("Class Period").

23   Excluded from the Class are any of Transdev's officers, directors, legal representatives,

24   heirs, successors, or assigns, and any entity in which Transdev has a controlling interest.

25   The Class is objectively defined and will allow the Court to readily identify members.

26   Accordingly, the Class is properly defined.

27

28   ───────────────
[16] *See* Causes of Action 1-8 in Class Action Complaint for Damages and Injunctive Relief, ECF No. 1, pp. 13-25.

**B.    The Class Satisfies Federal Rule of Civil Procedure 23(a)**

**i.    The Proposed Class Is Sufficiently Numerous**

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "For purposes of this requirement, '"impracticability" does not mean "impossibility," but only the difficulty or inconvenience of joining all members of the class.'" *Johnson*, 72 F.4th at 886. "There is no specific number of class members required." *Id.* "However, proposed classes . . . of more than sixty are sufficiently large." *Id.*; *accord A. B. v. Hawaii State Dep't of Educ.*, 30 F.4th 828, 835 (9th Cir. 2022). Here, Transdev's Responses to Plaintiff's Interrogatories, Set One provide that Transdev employed 4,966 unique bus driver employees during the Class Period. Hewgill Decl., ¶ 17, Ex. 1.

**ii.    Commonality Is Met**

"A class satisfies Rule 23's commonality requirement if there is at least one question of fact or law common to the class." *Johnson*, 72 F.4th at 887. "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. Class members' claims "must depend upon a common contention," which "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Even "a single common question will do." *Id.* at 359 (cleaned up). In determining whether commonality is met, "a district court is limited to resolving whether the evidence establishes that a common question is *capable* of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Olean*, 31 F.4th at 666-67.

Here, there are substantial discrete, common factual and legal questions that unite the Class, including but not limited to:

- whether Transdev pays bus driver employees based on paddle times rather than actual time worked, resulting in underpayment;

- whether Transdev's automatic deduction of 30-minute meal breaks from time records results in bus drivers being underpaid;

- whether Transdev systematically fails to compensate drivers for all hours worked as a result of its policy to pre-load its timekeeping system with paddle times;

- whether Transdev has a common practice of providing noncompliant meal and rest breaks;

- whether Transdev has a common practice of not paying drivers meal and rest break premiums when compliant meal and/or rest breaks are not provided;

- whether Transdev fails to relinquish control over drivers due to its policy and practice of prohibiting drivers from taking rest breaks unless and until the bus is cleared of all passengers;

- whether Transdev has a common policy and practice of not paying split-shift premiums to drivers who worked split shifts;

- whether Transdev's wage statements comply with Labor Code § 226(a) in light of the underlying violations described above; and

- whether Transdev has a common practice of not paying all wages owed upon termination due to the underlying violations described above.

*See Schulz v. Qualxserv, LLC*, No. 09-CV-17-AJB (MDD), 09-CV-2081, 2012 U.S. Dist. LEXIS 58561, *11 (S.D. Cal. Apr. 26, 2012) (Battaglia, J.) (commonality satisfied where plaintiffs challenged uniform policies and systemic practices that applied to the class of employees); *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 633 (S.D. Cal. Apr. 26, 2010) ("[p]laintiffs have identified common factual questions, such as whether [d]efendants' policies deprived the putative class members of meal periods, rest periods, overtime pay, and reimbursement for installation tool expenses, and common legal questions, such as [d]efendants' obligations under [the California Labor Code] and California's Unfair Competition law" and have provided evidence "that the relevant policies were common across [d]efendant's California facilities").

### iii. Typicality Is Met

Typicality requires "the claims or defenses of the representative parties" to be "typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "Typicality is a 'permissive standard[ ].'" *Johnson*, 72 F.4th at 888. It "refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Proposed Class representative Cherisha Lovejoy plainly satisfies this requirement. Like all Class members, Lovejoy worked as a bus driver for Transdev during the Class Period. And like all Class members, Lovejoy was injured by Transdev's common course of conduct in systematically failing to pay for actual hours worked, failing to provide legally-compliant meal and rest breaks, failing to pay split shift premiums, failing to provide accurate itemized wage statements, and failing to pay proper waiting time penalties. *See Martin v. SYSCO Corp.*, 325 F.R.D. 343, 350 (E.D. Cal. Apr. 19, 2018) (finding that plaintiff's claims were typical of those of the class members, who raised claims based on a failure to provide proper meal and rest breaks, where plaintiff stated in his declaration that he worked as a driver for defendant during part of the class period, typically worked more than ten hours in a shift, received a route manifest for each shift he worked that he was required to follow and which dictated when he would take his meal and rest breaks, and that defendant provided him a policy handbook noting that he would only receive two rest breaks per shift, no matter how many hours he worked).

### iv. Lovejoy and Her Counsel Are Adequate

Adequacy is satisfied when "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). Courts "must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action

1    vigorously on behalf of the class?'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985
2    (9th Cir. 2011). In considering the adequacy of counsel, the court must consider "(i) the
3    work counsel has done in identifying or investigating potential claims in the action; (ii)
4    counsel's experience in handling class actions, other complex litigation, and the types of
5    claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the
6    resources that counsel will commit to representing the class." FED. R. CIV. P. 23(g)(1)(A).
7        Lovejoy has no antagonistic or conflicting interest with the members of the proposed
8    Class. To the contrary, she has demonstrated her commitment to the Class by actively
9    participating in the litigation. She worked with counsel to develop her claims, regularly
10   communicates with Class counsel, and generally stays apprised of the progress of the
11   litigation. Lovejoy Decl., ¶10. Lovejoy has experienced and capable counsel who have
12   been appointed to represent classes in numerous class actions, including wage and hour
13   cases, and will vigorously prosecute the class claims. Hewgill Decl., ¶ 5; Zeldes Decl., Ex.
14   A (Schonbrun Seplow Harris Hoffman & Zeldes, LLP, firm resume). Counsel have devoted
15   a significant amount of time and resources to the case, including pursuing third-party
16   discovery, reviewing hundreds of thousands of pages of documents, retaining an economist
17   and taking depositions. Hewgill Decl., ¶¶ 7-13. The adequacy requirement is therefore
18   satisfied.

19       **C.    The Class Satisfies Rule 23(b)(3)**

20           **i.    Common Issues Predominate**

21       The "predominance inquiry tests whether proposed classes are sufficiently cohesive
22   to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S.
23   442, 453 (2016); *accord Owino v. CoreCivic, Inc.*, 60 F.4th 437, 444 (9th Cir. 2022). "This
24   calls upon courts to give careful scrutiny to the relation between common and individual
25   questions in a case." *Tyson Foods, Inc.*, 577 U.S. at 453. "An individual question is one
26   where 'members of a proposed class will need to present evidence that varies from member
27   to member,' while a common question is one where 'the same evidence will suffice for
28   each member to make a *prima facie* showing [or] the issue is susceptible to generalized,

class-wide proof.'" *Id.* "The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Id.* "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id.* "If common questions 'present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication,' then a 'clear justification' exists for 'handling the dispute on a representative rather than on an individual basis,' and the predominance test is satisfied."[17] *Krueger v. Wyeth, Inc.*, 310 F.R.D. 468, 479 (S.D. Cal. 2015).

Predominance "begins . . . with the elements of the underlying cause of action."[18] *Olean*, 31 F.4th at 665. Here, Lovejoy's claims each turn on objective questions that will resolve the heart of the litigation for all Class members.

### a. Plaintiff's Off the Clock Claim Presents Common Questions Which Predominate Over Individualized Issues

Under California law, employees must be compensated for all time "during which an employee is subject to the control of an employer," including "all the time the employee is suffered or permitted to work, whether or not required to do so." *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 585-587 (2000). Employers also are required to compensate their employees for all overtime, which is calculated at one and one-half (1.5) times the regular rate of pay for all hours worked in excess of eight (8) hours per day and/or forty

---

[17] Lovejoy may show that evidence is a permissible method of proving liability classwide "by showing that each class member could have relied on that [evidence] to establish liability if he or she had brought an individual action" and the evidence "could have sustained a reasonable jury finding" on the merits of the common question. *Tyson Foods, Inc.*, 577 U.S. at 455; *Olean*, 31 F.4th at 667.

[18] "Rule 23(b)(3)..does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof." *Amgen*, 568 U.S. at 469.

(40) hours per week, and for the first eight (8) hours on the seventh consecutive workday, and with double time for all hours worked in excess of twelve hours (12) in any workday and for all hours worked in excess of eight (8) hours on the seventh consecutive day of work in any workweek. Labor Code §§ 510, 1194; 8 Cal. Code Regs. § 11010, subd. 3.

Transdev failed to pay Class members minimum wage for off-the-clock work. A plaintiff may establish liability for an off-the-clock claim by proving that: (1) employees "performed work for which [they] did not receive compensation;" (2) the employer "knew or should have known that [employees] did so;" and (3) the employer "stood idly by." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014). Courts have certified class actions alleging off-the-clock claims, even where the employer's formal policies prohibit off-the-clock work, where there is evidence of a "controlling company-wide policy." *Braun v. Safeco Ins. Co. of Am.*, 2014 WL 9883831, at *14 (C.D. Cal. Nov. 7, 2014); *see Schulz*, 2012 U.S. Dist. LEXIS 58561, at *20-21 (finding that common questions predominated plaintiffs' off-the-clock claims where "Plaintiffs challenge[d] the uniform policy not to compensate service technicians for [] specified activities."). Here, substantial evidence demonstrates that putative Class members were not compensated for time spent before their shifts during which they were required to perform work-related tasks, including, *e.g.*, Class member bus drivers coming in early before shifts to prepare their buses so that they could start their routes on time; coming in early to be transported by the company vehicle (car, bus, or tram) to where Class member bus drivers met their bus on the route; coming into the yards late due to traffic, or coming in late due to having to take a relief car or bus back to the yards after their shift but not being paid beyond paddle time; and working into their meal breaks (which are automatically deducted from their time worked) and not being paid for that time. As employees had to perform these tasks while off-the-clock, they were not compensated for this time. Whether Transdev failed to compensate employees for all hours worked as a result of their policies, which required employees to be subject to Transdev's control while off the clock, can be adjudicated on a classwide basis. *See Jimenez*, 765 F.3d at 1166 (affirming certification of off-the-clock

class based on policy discouraging reporting of off-the-clock work, and finding that whether "such a policy, if it exists, deprives employees of compensation for work for which they are entitled to compensation" is a common legal question); *see also*, *e.g*., *Jones v. Farmers Ins. Exch* (2013) 221 Cal.App.4th 986 ("Plaintiff's theory of recovery based on the existence of a uniform policy denying compensation for preshift work presents predominantly common issues of fact and law."). As such, Lovejoy's off the-clock theory is amenable to class treatment.

b.    **Plaintiff's Rest Break Claim Presents Common Questions Which Predominate Over Individualized Issues**

California law requires employers to provide a work-free 10-minute rest period to their employees for every four hours or major fraction thereof worked. Labor Code § 226.7; Wage Order No. 9-2001 § 12(A). Employers must relieve employees of all duties and relinquish control over how employees spend their time during rest breaks. *Augustus v. ABM Security Services, Inc*., 2 Cal. 5th 257, 269 (2016). Employees are entitled to one additional hour of pay at the employee's regular rate of pay for each day that one or more work-free rest periods are not provided. Labor Code § 226.7. Claims alleging that a uniform practice consistently applied to a group of employees is in violation of the wage and hour laws are the sort routinely, and properly, found suitable for class treatment. *See Ruiz v. XPO Last Mile, Inc*., No. 5cv2125 JLS (KSC), 2016 U.S. Dist. LEXIS 152095, *35 (S.D. Cal. Feb. 1, 2016) (finding that "common questions of law and fact predominate over individualized issues because liability under [p]laintiff's meal and rest break claims in this case turns largely on [d]efendant's policies and practices, which, lawful or not, applied to the entire class").

Defendants have not produced any policy statement which was distributed to drivers, which instruct drivers that they must be relieved of all duty (including not having a occupied bus) to begin their rest break.[19] Many passengers are resistant to clearing the bus.

---

[19] Class Member Decs., Decl. 1 ¶9, Decl. 2 ¶10, Decl. 3 ¶8, Decl. 4 ¶11, Decl. 5 ¶10, Decl. 6 ¶11, Decl. 7 ¶10, Decl. 8 ¶9, Decl. 9 ¶10, Decl. 10 ¶10, Decl. 11 ¶10, Decl. 12 ¶8, Decl.

Lovejoy Decl., ¶ 6.  Bus drivers are not allowed to leave their buses when occupied.[20] Diaz Depo., 63:5-8, 63:9-15. This means that the class members' rest breaks, when they were lucky enough to get a few minutes of an "opportunity break", amounted to sitting on an occupied bus monitoring passengers. Class members were not relieved of all duty for rest breaks as required by law. *Augustus v. ABM Security Services, Inc*., 2 Cal. 5th 257 (2016).

This reality is even more stark in the many thousands of paddles where scheduled breaks are only 10 minutes. As evidenced above, paddles reviewed in the 20% representative sample provided in discovery show that exclusively 10-minute opportunity breaks were scheduled during 1,664 paddles, which represent not just one shift but many thousands of workdays. Hewgill Decl., ¶ 29. Opportunity breaks are what Transdev refers to as rest breaks. Diaz Depo., 58:15-59:9, 68:15-19. Bus drivers cannot take their rest break unless and until the bus has been cleared of all passengers. Diaz Depo., 63:5-8, 63:9-15. However, the 10-minute opportunity breaks scheduled on paddles do not factor in additional time for clearing a bus of all passengers. Krueger Deposition 65:10-66:16. Accordingly, it is virtually impossible for bus drivers to take a work-free 10-minute rest period because by the time the bus has been cleared of all passengers, time on the 10-minute rest period has already started ticking down. Indeed, proposed Class members indicated that they are unable to take 10-minute rest breaks because most opportunity breaks are only 10 minutes long, there is not enough time to clear the bus in order to take the full 10-minute rest break, and they are not permitted to leave the bus to take a break while passengers are still onboard the bus. Diaz Depo., 63:5-8, 63:9-15. Further, it is often the case that bus drivers run behind on their route, preventing them from stopping to take the opportunity break.[21] Although the paddles appear to show that Transdev is offering

---

13 ¶8, Decl. 14 ¶9, Decl. 15 ¶10, Decl. 16 ¶10, Decl. 17 ¶10, Decl. 18 ¶9.; Lovejoy Decl. ¶6.

[20] Class Member Decs., Decl. 1 ¶7, Decl. 2 ¶8, Decl. 3 ¶7, Decl. 4 ¶9, Decl. 5 ¶8, Decl. 6 ¶9, Decl. 7 ¶8, Decl. 8 ¶7, Decl. 9 ¶8, Decl. 10 ¶8, Decl. 11 ¶8, Decl. 12 ¶6, Decl. 13 ¶6, Decl. 14 ¶7, Decl. 15 ¶8, Decl. 16 ¶8, Decl. 17 ¶8, Decl. 18 ¶7; Lovejoy Decl. ¶6.

[21] Class Member Decls., Decl. 1 ¶7, Decl. 2 ¶8, Decl. 3 ¶7, Decl. 4 ¶9, Decl. 5 ¶8, Decl. 6 ¶9, Decl. 7 ¶8, Decl. 8 ¶7, Decl. 9 ¶8, Decl. 10 ¶8, Decl. 11 ¶8, Decl. 12 ¶6, Decl. 13 ¶6, Decl. 14 ¶7, Decl. 15 ¶8, Decl. 16 ¶8, Decl. 17 ¶8, Decl. 18 ¶7.

1   "opportunity breaks", and Transdev may argue they are facially compliant with the law,

2   that does not save Transdev in the face of evidence demonstrating that a contrary and

3   uniform policy and practice exists (that employees are not able to take compliant off duty

4   breaks). *See Brewer v. Gen. Nutrition Corp.*, No. 11-CV-3587 YGR, 2014 U.S. Dist.

5   LEXIS 159380, *24 (N.D. Cal. Nov. 12, 2014) ("[E]ven if an employer has a formal policy

6   that is compliant with California law, proof of an informal but common scheduling policy

7   that makes taking breaks extremely difficult, or other informal means of exerting pressure

8   to discourage taking meal and rest breaks, would be sufficient to establish liability to a

9   class."); *Boyd v. Bank of Am. Corp.*, 109 F. Supp. 3d 1273, 1306 (C.D. Cal. May 6, 2015)

10  ("[A] formal policy will not be controlling where it is otherwise shown that an employer

11  pressured or coerced employees to skip breaks.").

12      The question of whether such rest breaks are compliant with the requirements of

13  California law is a predominating common question capable of classwide resolution.

14  Similar to here, in *Antemate v. Estenson Logistics*, the plaintiff argued that the defendant

15  company's informal policies and practices created an environment in which yard hostlers

16  were routinely pressured not to take compliant breaks; specifically, given the expectation

17  and pace set for deliveries by the company, hostlers often fell behind schedule, preventing

18  them from taking breaks. *Antemate v. Estenson Logistics, LLC*, No. CV 14-5255 DSF

19  (RZx), 2015 U.S. Dist. LEXIS 83543, *4 (C.D. Cal. June 15, 2015). The plaintiff supported

20  this theory with declarations and deposition testimony from ten or more yard hostlers who

21  worked at various California facilities. *Id.*, *4-5. Ultimately, the court found that questions

22  of whether the defendant engaged in the alleged uniform policies and practices and failed

23  to provide meal breaks and authorize and permit rest breaks pursuant to California law

24  were common questions that predominated and thus granted certification of these claims.

25  *Id.*, *10-11. So too should the Court here. Certification is not defeated by the fact that Class

26  members may have been provided lawful rest periods from time to time. As discussed in

27  *Alberts v. Aurora Behavioral Health Care*, 241 Cal.App.4th 388, 409 (2015), "plaintiffs

28  do not claim they were universally denied all breaks, nor must they do so to warrant

1   certification….[A] class proponent need only show a 'consistent[]' application of the

2   policy." Additionally, individual inquiries concerning how many breaks each Class

3   member missed go to damages calculations and do not preclude a finding of predominance.

4   *See Levya v. Medline Indus. Inc*., 716 F.3d 510, 514 (9th Cir. 2013) ("The amount of

5   damages is invariably an individual question and does not defeat class action treatment.")

6   (quoting *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) (brackets omitted)).

7   
8                    **c.    Plaintiff's Meal Break Claim Presents Common Questions
             Which Predominate Over Individualized Issues**

9           California law requires an employer to provide a 30-minute meal break for a shift of

10  more than 5 hours per day and to provide a second meal break if a shift is 10 or more hours.

11  Labor Code § 512(a); Wage Order No. 9-2001 §§ 11(A), (B). The first meal break may be

12  waived by mutual agreement between the employee and employer for shifts up to 6 hours

13  in length, and second meal breaks may be waived by mutual agreement for shifts up to 12

14  hours in length provided that the first meal period was not waived. Labor Code § 512(a);

15  Wage Order No. 9-2001 §§ 11(A), (B). Employees are entitled to one additional hour of

16  pay at the employee's regular rate of pay for each day that one or more lawful meal breaks

17  are not provided. Labor Code § 226.7.

18          Transdev uniformly failed to provide first meal periods to employees working over

19  5 hours in a day and second meal periods to employees working over 10 hours in a day and

20  failed to pay these employees an additional hour of pay at their regular rate of

21  compensation. This is evidenced above by Class member declarations. Because the denial

22  of compliant meal breaks and failure to pay premiums for missed meal breaks are uniform

23  and apply across-the-class, this theory of recovery is amenable to class treatment. *See Ruiz*,

24  2016 U.S. Dist. LEXIS 152095 at *35; *Antemate*, 2015 U.S. Dist. LEXIS 83543 at *10-11;

25  *Harp v. Starline Tours of Hollywood, Inc.*, No. 2:14-cv-07704-CAS(Ex), 2015 U.S. Dist.

26  LEXIS 99138, *20 (C.D. Cal. July 27, 2015) (finding common issues predominate where

27  plaintiffs offered three declarations from employees testifying they "were often prevented

28  from taking lunch breaks, but that such breaks were nonetheless automatically deducted

Case No. 23cv380

from their reported hours"); *Campbell v. Vitran Express Inc.*, No. CV 11-5029 RGK (SHx), 2015 U.S. Dist. LEXIS 155512, *26 (C.D. Cal. Nov. 12, 2015) (finding common questions predominate as to plaintiff's claim that defendant maintained an unofficial policy to deprive employees of meal and rest breaks).

Similar to the rest breaks scheduled for only 10 minutes with no additional time to secure and clear the buses making a full break relieved all duty impossible, Transdev also has paddled in the class period which call for meal periods of exactly 30 minutes, with no additional time to secure or clear the bus making full meal breaks relieved of all duty impossible in those instances. See Hewgill Decl. ¶ 20, and Ex. 4. Furthermore, Transdev's VDS system has a record of every shift in which one of these defective breaks was scheduled. Krueger Deposition at 69:13-70:7.

### d. Plaintiff's Split Shift Claim Presents Common Questions Which Predominate Over Individualized Issues

California law requires that employers pay a premium to employees who work a split-shift, *i.e.*, an employee who works two shifts in the same day with a time gap in between shifts that is neither a rest nor meal period. California's split shift premium regulation, IWC Wage Order 9, section 4(c), specifically states that:

> When an employee works a split shift, one (1) hour's pay at the minimum wage shall be paid in addition to the minimum wage for that workday, except when the employee resides at the place of employment.

Cal. Code Regs., tit. 8, §11040(4)(C).  In this regulation, a "split shift" means "a work schedule, which is interrupted by non-paid, non-working periods established by the employer, other than bona fide rest or meal periods."  Cal. Code Regs., tit. 8, § 11040(2)(Q).

As Plaintiff's evidence demonstrates, Transdev had a uniform policy and practice during the Class Period to regularly schedule bus operators to drive in the morning, leave for two or more hours, and then return to drive in the afternoon or evening.[22]  Based on this

---

[22] *See* Class Member Decs., Decl. 1 ¶13, Decl. 5 ¶14, Decl. 6 ¶13, Decl. 7 ¶14, Decl. 8 ¶11,

split-shift scheduling by Transdev, its bus operators regularly worked split-shifts, and were

thus entitled to split-shift premiums pursuant to IWC Wage Order 9. Cal. Code Regs., tit.

8, §11040(4)(C). Under Transdev's policy, however, it consistently did not add a split-shift

premium to the wages of employees who worked split-shifts, in direct violation of the law.

Diaz Depo., 79:24-80:19.[23] Here, based on the evidence presented, common questions

predominate in the analysis of Transdev's liability for split-shift premiums.[24] Federal

courts in California have routinely certified classes of employees with split-shift premium

claims under similar circumstances based on similar evidence of a defendant's classwide

conduct. *See Kamar v. Radio Shack Corp.*, 375 Fed. Appx. 734 (9th Cir. 2010), *affirming*

*Kamar v. Radio Shack Corp.*, Case No. 2:07-cv-02252-SJO-AJW (C.D. Cal Oct. 8, 2008)

(certifying class of employees with split-shift premium claims which raise "core common

issues"); *see also Saecho v. Landry's, Inc.*, 2016 U.S. Dist. LEXIS 33409 at *19-24 (N.D.

Cal. Mar. 15, 2016) (certifying split-shift premium class because "common questions []

predominate in the adjudication of the claims of the split-shift class" based on defendant's

policies and practices).

        **e.**    **Plaintiff's Derivative Wage Statement and Waiting Time Claims Present Common Questions Which Predominate Over Individualized Issues**

    An employer must provide employees with wage statements accurately reflecting,

*inter alia*, "(1) gross wages earned, (2) total hours worked by the employee…(5) net wages

earned…(8) the name and address of the legal entity that is the employer,…and (9) all

applicable hourly rates in effect during the pay period and the corresponding number of

---

[23] Decl. 9 ¶13, Decl. 10 ¶13, Decl. 11 ¶14, Decl. 12 ¶11, Decl. 13 ¶11, Decl. 15 ¶12, Decl. 16 ¶13, Decl. 18 ¶13; Xitco decl., 10; Hewgill Decl., ¶ 25, Ex. 9.

[23] Class Member Decls., Decl. 1 ¶13, Decl. 5 ¶14, Decl. 6 ¶13, Decl. 7 ¶14, Decl. 8 ¶11, Decl. 9 ¶13, Decl. 10 ¶13, Decl. 11 ¶14, Decl. 12 ¶11, Decl. 13 ¶11, Decl. 15 ¶12, Decl. 16 ¶13, Decl. 18 ¶13

[24] A common predominant question for this claim includes, without limitation: does Transdev have a practice of scheduling and requiring employees to work split-shifts while denying them payment of split-shift premiums? This common question on the split-shift claims demonstrates "the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes v. Wal-Mart Stores, Inc.*, 564 U.S. 338, 350 (2011).

1   hours worked at each hourly rate by the employee….” Labor Code § 226(a). “An employee

2   suffering injury as a result of a knowing and intentional failure by an employer to comply

3   with subdivision (a) is entitled to recover the greater of all actual damages or [statutory

4   penalties].” Labor Code § 226(e). An employee is deemed to suffer injury if the employee

5   cannot promptly and easily determine any requisite information from the wage statement

6   alone. Labor Code § 226(e)(2). Here, Transdev has violated Labor Code §§ 226(a)(1), (2),

7   (5), (8), and (9) by issuing wage statements that are inaccurate because they do not reflect

8   all wages owed and hours worked, as described above, and do not identify Transdev's legal

9   name, “Transdev Services, Inc.”

10      Meal period premiums are “wages.” *Murphy v. Kenneth Cole Productions, Inc*., 40

11  Cal. 4th 1094, 1114 (2007) (“we hold…that the ‘additional hour of pay’ is a premium wage

12  intended to compensate employees, not a penalty.”). Under Labor Code § 226.7, an

13  employee is entitled to an additional hour of wages *immediately* upon being forced to miss

14  a meal period. *Murphy*, 40 Cal. 4th at 1108. An employer must pay the premium “wage”

15  for missed meal and rest periods on the payday for the pay period in which the meal and/or

16  rest periods were missed. *Id.* (holding “a payment owed pursuant to section 226.7 is akin

17  to an employee's immediate entitlement to payment of wages or for overtime”). Transdev

18  failed to pay Lovejoy and Class members all wages owed, including but not limited to

19  premium wages for missed meal and rest periods, and failed to report the same on their

20  respective wage statements as required by Labor Code § 226. Where, as here, the proposed

21  Class is based on alleged defects in the format of wage statements that are prepared and

22  distributed to employees in a uniform manner, common issues will clearly predominate.

23      In *Jaimez v. Daiohs USA, Inc*., 181 Cal.App.4th 1286, 1306 (2010), the Court of

24  Appeal reversed the trial court's denial of class certification of a wage statement class and

25  directed the trial court to certify the wage statement class. The Court specifically rejected

26  the defendant's argument that individualized issues would predominate with respect to the

27  element of “actual injury,” stating “[t]he fact that individualized proof of damages may

28  ultimately be necessary does not mean, however, that Jaimez's theory of recovery is not

amenable to class treatment. A common legal issue predominates the claim, and it makes no sense to resolve it in a piecemeal fashion." *Id*., 1307; *see also Lubin v. The Wackenhut Corp*., 5 Cal.App.5th 926, 959 (2016) (plaintiffs' wage statement claim is amenable to class treatment); *Flores v. Dart Container Corp*., No. 2:19-cv-0083 WBS JDP, 2021 U.S. Dist. LEXIS 6897, *18-19 (E.D. Cal. Jan. 12, 2021) (finding class shared common legal questions, including whether defendants' policy of failing to provide wage statements that accurately identified total hours worked during pay period violated Labor Code § 226, and that these questions predominated over questions affecting only individual class members); *Parker v. Cherne Contr. Corp*., No. 18-cv-01912-HSG, 2020 U.S. Dist. LEXIS 218187, *27 (N.D. Cal. Nov. 20, 2020) (concluding for purposes of class certification that whether wage statements were legally deficient was a common question of law and fact that predominated over individual issues).

Moreover, in 2013, three years after the *Jaimez v. Daiohs* decision was published, the California Legislature amended Labor Code § 226 to state that an employee is "*deemed to suffer injury*" under certain circumstances. *See* Sen. Bill No. 1255 (2011-2012 Reg. Sess.) § 1; Labor Code § 226 (e)(2). One of the circumstances under which an injury is presumed is if the employer fails to list the name and address of the employer, and the employee cannot "promptly and easily determine" the missing information "from the wage statement alone." *See* Labor Code § 226(e)(2)(B)(iii). The statute further provides that "promptly and easily determine" is defined to mean that "a reasonable person would be able to readily ascertain the information without reference to other documents or information." *See* Labor Code § 226(e)(2)(C). Therefore, the Legislature has clarified that individual proof of injury is not required, but rather, the element of injury is determined based upon a reasonable person standard. The question of whether a reasonable person would be able to readily ascertain the name of the employer from the wage statement alone, without reference to other documents or information, is a common question that can be answered on a class-wide basis. *See Escano v. Kindred Healthcare Operating Co., Inc.*, No. CV 09-04778 DDP (CTx), 2013 WL 816146 at *11-13 (C.D. Cal., March 5, 2013)

Case No. 23cv380

(certifying wage statement class and stating "This court agrees that the injury requirement should be interpreted as minimal in order to effectuate the purpose of the wage statement statute; if the injury requirement were more than minimal, it would nullify the impact of the requirements of the statute.").

Transdev is also liable for waiting time penalties as a result of its willful failure to pay all unpaid overtime wages stemming from its unlawful policy and practice of paying bus drivers according to paddle time rather than their actual hours worked. *See Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1201 ("willful" under Labor Code § 203 means the employer acted "intentionally" and need not be "based on deliberate evil purpose."). Further, Lovejoy may recover waiting time penalties based on Transdev's failure to pay meal and rest period premiums. *See Naranjo v. Spectrum Security Services, Inc*., 13 Cal. 5th 93, 117, 121 (2022). As this claim is derivative of the Minimum Wage, Meal Break, and Rest Break claims, it should be certified for the same reasons as those claims should be certified. *See Gomez v. J. Jacobo Farm Labor Contr., Inc*., No. 1:15-cv-01489-AWI-BAM, 2020 U.S. Dist. LEXIS 69130, *20 (E.D. Cal. Apr. 20, 2020) (holding that because plaintiffs' rest break claim warrants certification, the derivative claims, including the wages upon termination claim and accurate itemized wage statement claim, also warrant class certification); *Vazquez v. Kraft Heinz Foods Co*., No. 16-cv-2749-WQH-BLM, 2018 U.S. Dist. LEXIS 173784, *36-37 (S.D. Cal. Oct. 9, 2018) (certifying derivative wage statement and waiting time classes).

### ii. Lovejoy's Damages Model for Calculating Classwide Damages is Appropriate

Under the predominance inquiry, plaintiffs must also demonstrate that "damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). The damages model must be consistent with plaintiffs' theory of liability—in other words, it "must measure only those damages attributable to that theory." *Id*., 35. "Calculations need not be exact," *id*., nor is it necessary "to show that [the] method will work with certainty at this time." *Khasin v. R.C. Bigelow, Inc*., No. 12-cv-2204-WHO,

1  2016 U.S. Dist. LEXIS 42735, *8 (N.D. Cal. Mar. 29, 2016) (citation omitted).

2      "Individual differences in calculating the amount of damages will not defeat class

3  certification where common issues otherwise predominate." *Castillo v. Bank of America*,

4  980 F.3d 723, 730 (9th Cir. 2020); *see Vaquero v. Ashley Furniture Indus. Inc.*, 824 F.3d

5  1150, 1154 (9th Cir. 2016) ("Our precedent is well settled on this point."); *Leyva v. Medline

6  Indus. Inc*., 716 F.3d 510, 513 (9th Cir. 2013) ("damages determinations are individual in

7  nearly all wage-and-hour class actions"); *Yokoyama v. Midland Nat. Life Ins. Co*., 594 F.3d

8  1087, 1094 (9th Cir. 2010) (the "amount of damages is invariably an individual question

9  and does not defeat class action treatment").

10      Here, damages will be mathematically calculated based on Transdev's own records,

11  which provide a reliable evidentiary foundation upon which all of the claims in this case

12  can be tried on a classwide basis. For example, a comparison of Transdev's pay and time

13  records can be used to calculate unpaid wages. *See* Xitco Decl., ¶¶ 8-9 (describing process

14  for analyzing Transdev's payroll and time records and stating, "To quantify damages due

15  to the underpayment I would apply each employee's respective hourly rate paid to their

16  unpaid hours worked, and multiply overtime hours by 1.5 times the regular rate, and

17  double-time by 2 times the regular rate."). Damages for Lovejoy and the Class's other

18  claims will likewise be easily calculable. *See*, *e.g*, Xitco Decl., ¶ 13 ("If it is determined

19  that employees were not provided any rest breaks, I would calculate damages by applying

20  an hour of pay for every shift worked over 4 hours, or major fraction thereof, to the

21  employee's hourly rate at that time."), ¶ 19 ("I could quantify the number of violations

22  each employee incurred per pay period, and determine the amount of penalties associated

23  with accurate itemized wage statements."), ¶ 20 (describing methodology for calculating

24  all wages due upon termination of employment).

25      ### iii.   A Class Action Is Superior to Alternative Methods of Adjudication and Is Manageable

26      The superiority requirement tests whether "classwide litigation of common issues

27  will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace*,

28

1  *Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Here, the proposed Class satisfies the superiority

2  requirement because one trial resolving all claims, instead of hundreds of trials, is superior.

3  Unsurprisingly, courts routinely find class actions to be the superior method of adjudicating

4  claims in the wage and hour context. *See, e.g.*, *Kamar v. Radio Shack Corp.*, 254 F.R.D.

5  387, 406 (C.D. Cal. 2008) ("Employer practices and policies with regard to wages and

6  hours often have an impact on large numbers of workers in ways that are sufficiently

7  similar to make class-based resolution appropriate and efficient.").

8       Manageability is satisfied where the class can present common, representative proof

9  establishing liability. *See*, *e.g.*, *Bowerman v. Field Asset Servs., Inc*., 242 F. Supp. 3d 910,

10  933-36 (N.D. Cal. 2017). Further, "courts should not refuse to certify a class merely on the

11  basis of manageability concerns." *Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121, 1128

12  (9th Cir. 2017). Here, manageability is established because liability and damages can be

13  tried based upon the common facts and policies and practices related to the claims and

14  based on Lovejoy and Class members' testimony and on Transdev's own objective

15  business records and testimony. Lovejoy's theories of liability—that Transdev

16  systematically failed to pay bus drivers based on actual hours worked, instead paying them

17  based on estimated paddle and manifest times, and that Transdev failed to provide meal

18  and rest breaks and pay split-shift premiums in accordance with the law, among other

19  things—by their nature involve common questions eminently suited for class treatment, as

20  explained above. Damages will be assessed based on Transdev's own time and pay records.

21  Accordingly, the claims are manageable and well suited for class treatment.

22  **IV.  CONCLUSION**

23       For the reasons given above, Lovejoy respectfully requests that the Court grant her

24  motion and certify the Class pursuant to Rules 23(a) and (b)(3); appoint Plaintiff Cherisha

25  Lovejoy as the Class representative; and appoint Hewgill Cobb & Lockard, APC and

26  Schonbrun Seplow Harris Hoffman & Zeldes, LLP as counsel for the Class.

27

28

Date: September 6, 2024

**SCHONBRUN SEPLOW
HARRIS HOFFMAN & ZELDES, LLP**

By: _/s/ Helen I. Zeldes_
      Helen I. Zeldes (State Bar No. 220051)
      *hzeldes@sshhzlaw.com*
      Joshua A. Fields (State Bar No. 242938)
      *jfields@sshhzlaw.com*
      Aya Dardari (State Bar No. 344039)
      *adardari@sshhzlaw.com*
      501 West Broadway, Suite 800
      San Diego, California 92101
      Telephone: (619) 400-4990

      Justin Hewgill (State Bar No. 259528)
      **HEWGILL COBB & LOCKARD, APC**
      1620 Fifth Avenue, Suite 325
      San Diego, Ca 92101
      Tel: 619-432-2520 / Fax: 619-377-6026
      contact@hcl-lawfirm.com

      *Counsel for Plaintiff CHERISHA LOVEJOY
      and the Proposed Class.*