UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERISHA LOVEJOY, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRANSDEV SERVICES, INC., et al.,<br><br>Defendants. | Case No.: 23-cv-00380-AJB-MMP<br><br>**ORDER DECERTIFYING CLASSES, GRANTING DEFENDANT'S MOTION TO STAY, DENYING PLAINTIFF'S MOTION FOR APPROVAL OF NOTICE, AND STAYING ACTION**<br><br>**(Doc. Nos. 106; 110)** |

Pending before the Court are the parties' briefs in response to the Court's Order to Show Cause, a motion to stay the instant action filed by Defendant Transdev Services, Inc. ("Defendant") (Doc. No. 110), and a motion for approval of class action notice and notice plan filed by Plaintiff Cherisha Lovejoy ("Plaintiff") (Doc. No. 106). The Court deems these matters suitable for determination on the papers. *See* CivLR 7.1.d.1.

**I.    BACKGROUND**

**A.    Instant Action**

On February 27, 2023, Plaintiff filed the instant class action, alleging that Defendant violated California's wage and hour laws by paying Plaintiff and all other similarly situated Bus Driver/Operator employees for idealized "'paddle' estimates" of hours to be worked,

1

rather than actual hours worked. (*See generally* Doc. No. 1, Complaint ("Compl.").) Specifically, Plaintiff alleges: (1) failure to pay all regular, minimum and overtime wages; (2) failure to pay split shift wages; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) failure to provide accurate itemized wage statements; (6) failure to timely pay wages due; (7) violation of California's Unfair Competition Law; and (8) conversion. (*See generally id.*) The Court certified the class for all causes of action, after two rounds of briefing.[1] (*See* Doc. Nos. 72; 85.)

On October 6, 2025, Plaintiff filed a motion to stay five parallel state court actions (Doc. No. 85), which raised to the Court's attention alternative litigation against Defendant. On November 17, 2025, the Court denied Plaintiff's motion to stay. (Doc. No. 111.)

**B.    Related State Court Actions**

**1.    *Reese/Diaz* State Court Actions**

On August 21, 2021, David Reese filed the *Reese* action against Veolia Transportation[2] in Los Angeles Superior Court. *See* Compl., *Reese v. Veolia Transp. Inc.*, No. 21STCV29413 (Cal. Super. Ct. Aug. 10, 2021). On March 3, 2023, a first amended complaint was filed that included both Reese and Isaac Kharaud as plaintiffs. First Am. Compl., *Reese v. Veolia Transp. Inc.*, No. 21STCV29413 (Cal. Super. Ct. Mar. 8, 2023). The first amended complaint alleges eleven causes of action: (1) unpaid overtime, (2) unpaid meal period premiums, (3) unpaid rest period premiums, (4) unpaid minimum

---

[1]    For first, second, third, fourth, seventh and eighth causes of action, the certified class is defined as: "All current and former California Bus Driver/Operator employees of Transdev Services, Inc. who drove routes with stops in California during the period from February 27, 2019 through the present[.]" (Doc. No. 72 at 28.) The certified class for the fifth cause of action is defined as: "All current and former California Bus Driver/Operator employees of Transdev Services, Inc. who drove routes with stops in California during the period from February 27, 2022 through the present[.]" (Doc. Nos. 87 at 8.) For the sixth cause of action, the certified class is defined as: "All former California Bus Driver/Operator employees of Transdev Services, Inc. who drove routes with stops in California during the period from February 27, 2020 through the present[.]" (*Id.*)

[2]    Veolia Transportation Services, Inc. changed its name to Transdev Services, Inc. on August 1, 2014, by filing an Amended Statement by Foreign Corporation with the California Secretary of State. (*See* Doc. No. 117-4 at 2.)

wages, (5) final wages not timely paid, (6) wages not timely paid during employment, (7) non-compliant wage statements, (8) failure to keep requisite payroll records, (9) unreimbursed business expenses, (10) violation of California's Business and Professions Code, and (11) violation of California Labor Code Private Attorneys General Act of 2004 ("PAGA"). *Id.*

The proposed class is defined as:

> All current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from August 10, 2017 to final judgment and who reside in California.

> (Subclass A) All class members who were required by Defendants to stay on Defendants' premises for rest breaks.

> (Subclass B) All class members who received overtime compensation at a rate lower than their respective regular rate of pay because Defendants failed to include all non-discretionary bonuses or other incentive-based compensation in the calculation of the regular rate of pay for overtime pay purposes.

*Id.* ¶ 15.

On October 4, 2022, Victor Diaz filed the *Diaz* class action against Transdev North America, Inc.,[3] in Los Angeles Superior Court. *See* Class Action Compl., *Diaz v. Transdev Servs., Inc*, No. 22STCV32496 (Cal. Super. Ct. Oct. 4, 2022). Two months later, Diaz filed the *Diaz* PAGA representative action. *See* PAGA Representative Action Compl., *Diaz v. Transdev Servs., Inc.*, No. 22STCV38405 (Cal. Super. Ct. Dec. 9, 2022). On January 3, 2024, the *Diaz* class and PAGA actions were deemed related to the *Reese* action with the latter to serve as the lead case. Minute Order, *Reese v. Veolia Transp. Inc.*, No. 21STCV29413 (Cal. Super. Ct. Jan. 3, 2024).

On February 20, 2024, Diaz filed a first amended complaint in both the *Diaz* class and *Diaz* PAGA actions. *See* First Am. Class Action Compl., *Diaz v. Transdev Servs., Inc.*,

---

[3]    "Transdev North America., Inc. is the parent holding company of Transdev Services, Inc." (Doc. No. 110-1, Declaration of Andrew J. Weissler in Support of Motion to Stay ("Weissler Stay Decl."), at ¶ 9.)

No. 22STCV32496 (Cal. Super. Ct. Feb. 20, 2024); First Am. PAGA Representative Action Compl., *Diaz v. Transdev Servs., Inc.*, No. 22STCV38405 (Cal. Super. Ct. Feb. 20, 2024). The first amended *Diaz* class action complaint alleges eight causes of action: (1) failure to pay wages including overtime, (2) failure to provide meal periods, (3) failure to provide rest periods, (4) failure to pay timely wages, minimum wages, (5) failure to timely pay wages during employment, (6) failure to provide accurate wage statements, (7) issuing payment of wages in the form of a non-compliant instrument, and (8) violation of California's Business and Professions Code. *See generally* First Am. Class Action Compl., *Diaz v. Transdev Servs., Inc.*, No. 22STCV32496 (Cal. Super. Ct. Feb. 20, 2024).

The proposed class is defined as:

> All persons who have been employed by Defendant as Non-Exempt Employees or equivalent positions, however titled, in the state of California within four (4) years from the filing of the Complaint in this action until its resolution. (collectively referred to as the "Class" or "Plaintiff's Class" or "Class Members").

*Id.* ¶ 10. The amended complaint additionally proposes seven subclasses. *Id.* ¶ 11.

According to Defendant, "[f]ollowing relation, the parties engaged in extensive written discovery and depositions," "Transdev produced thousands of pages of documents, including company policies, employee handbooks, timekeeping records, wage statements, and class data," and "Plaintiff took four Person[] Most Knowledgeable depositions, each of which lasted a full day." (Doc. No. 110 at 12–13; Weissler Stay Decl. ¶ 13.)

On September 30, 2025, the parties to the *Reese* and *Diaz* actions filed a joint notice of settlement stating that they "ha[d] reached a global settlement" in both actions that "once approved, will resolve these actions in their entirety." Joint Notice of Settlement, *Reese v. Veolia Transp. Inc.*, No. 21STCV29413 (Cal. Super. Ct. Sept. 30, 2025). The parties anticipated filing a motion for preliminary approval within 120 days. *Id.*

### 2.    *Brown* State Court Action

On September 18, 2023, Patricia Brown filed a PAGA representative action against Transdev Services, Inc. in Los Angeles Superior Court. Compl. for Enforcement under

23-cv-00380-AJB-MMP

PAGA, *Brown v. Transdev Servs., Inc.*, No. 23AHCV02160 (Cal. Super. Ct. Sept. 18, 2023). On September 23, 2025, the *Brown* action was deemed related to the *Reese* action, with the latter being the lead case. Minute Order, *Brown v. Transdev Servs., Inc.*, No. 23AHCV02160 (Cal. Super. Ct. Sept. 23, 2025).

### 3. Additional Actions

Through briefing, the parties also made the Court aware of the following actions: *Ganther v. Transdev Servs., Inc.*, 4:22-cv-04230-KAW (N.D. Cal.); *Salaam v. Transdev Servs., Inc.*, No. 37-2021-00008373-CU-OE-CTL (Cal. Super. Ct.); *Arney v. Transdev Servs., Inc.*, No. 3:23-cv-02287 (N.D. Cal.); *Arney v. Transdev Alt. Servs., Inc.*, No. CU25-10351 (Cal. Super. Ct.); *Burkett v. Transdev Servs., Inc.*, No. CU25-02303 (Cal. Super. Ct.); *Burkett v. Transdev Servs., Inc.*, No. CU25-02303 (Cal. Super. Ct.); and *Smith v. Transdev Servs., Inc.*, No. VCU323993 (Cal. Super. Ct.).

The *Ganther* action, filed seven months before *Lovejoy* by a bus driver employed by Defendant, was initiated as a putative class and a separate PAGA action, which were consolidated. *See* Order, *Ganther v. Transdev Servs., Inc.*, 4:22-cv-04230-KAW (N.D. Cal. Feb. 20, 2024), Doc. No. 28. Due to the *Reese/Diaz* Settlement, Ganther filed an amended complaint to pursue her wage-and-hour claims on an individual basis. First Am. Compl., *Ganther v. Transdev Servs., Inc.*, 4:22-cv-04230-KAW (N.D. Cal. Dec. 19, 2025), Doc. No. 37; *see also* Joint Stip., *Ganther v. Transdev Servs., Inc.*, 4:22-cv-04230-KAW (N.D. Cal. Dec. 11, 2025), Doc. No. 35.

*Salaam* is a PAGA action initially filed on February 26, 2021, in San Diego Superior Court. Compl., *Salaam v. Transdev Servs., Inc.*, No. 37-2021-00008373-CU-OE-CTL (Cal. Super. Ct. Feb. 26, 2021). The action has been stayed pending resolution of the instant action since July 2024. Minute Order, *Salaam v. Transdev Servs., Inc.*, No. 37-2021-00008373-CU-OE-CTL (Cal. Super. Ct. July 26, 2024).

On May 17, 2023, the *Arney* action was filed by two bus operators along with another employee of Defendant's and asserts the same wage-and-hour claims. Class Action Compl., *Arney, et al. v. Transdev Servs., Inc.*, No. 3:23-cv-02287 (N.D. Cal. May 17,

23-cv-00380-AJB-MMP

2023). Subsequently, the parties stipulated to dismiss *Arney* without prejudice so that the plaintiffs could refile in state court pursuing their claims on an individual basis. *See* Compl., *Arney v. Transdev Alt. Servs., Inc.*, No. CU25-10351 (Cal. Super. Ct. Nov. 5, 2025).

More recently, the *Burkett* class and PAGA action was filed by a bus operator asserting the same wage-and-hour claims on behalf of a non-exempt California bus driver employees for a period running from April 9, 2021 to the present. Class Action Compl., *Burkett v. Transdev Servs., Inc.*, No. CU25-02303 (Cal. Super. Ct. Mar. 11, 2025).

Finally, on July 27, 2025, the *Smith* class and PAGA action was filed in state court asserting similar wage-and-hour claims against Defendant. Class & Representative Action Compl., *Smith v. Transdev Servs., Inc.*, No. VCU323993 (Cal. Super. Ct. July 22, 2025). Smith has agreed to dismiss her class claims and pursue only her individual claims. (Doc. No. 119-1, Declaration of Andrew J. Weisler in Support of Defendant Transdev Services, Inc.'s Response to the Court's Order to Show Cause ("Weissler OSC Decl."), at ¶ 15.)

## II.    RECONSIDERATION OF CLASS CERTIFICATION

The Court issued an Order to Show Cause as to whether the *Lovejoy* classes should be decertified in light of five parallel state court actions, the existence of which Plaintiff failed to address when seeking certification. (Doc. No. 111 at 8–9.) The Court directed the parties to file cross responses addressing the issue of superiority (*see* Doc. Nos. 119 (Defendant's Response); 120 (Plaintiff's Response)), followed by cross replies (*See* Doc. Nos. 122 (Plaintiff's Reply); 123 (Defendant's Reply)). With the matter briefed, the Court discharges the Order to Show Cause, vacates the related hearing, and decertifies the *Lovejoy* classes for the reasons set forth herein.

### A.    Legal Standard

"District courts have broad discretion to control the class certification process." *Davidson v. O'Reilly Auto Enters., LLC*, 968 F.3d 955, 962 (9th Cir. 2020) (quoting *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009)). "Even after a certification order is entered, the judge remains free to modify it in the light of subsequent

developments in the litigation." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 809 (9th Cir. 2010) (quoting *Gen. Tel. Co. of the Sw. v. Falcon,* 457 U.S. 147, 160 (1982)); *see also* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."). In fact, "[a] district court may decertify a class at any time." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).

"To certify a class, plaintiffs bear the burden of satisfying each of the four requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy—and at least one requirement of Rule 23(b)." *Small v. Allianz Life Ins. Co. of N. Am.*, 122 F.4th 1182, 1197 (9th Cir. 2024). Relevant here, pursuant to Rule 23(b)(3), "[a] class action may be maintained if Rule 23(a) is satisfied and if . . . the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To determine superiority, courts consider (1) the interest of class members individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability of concentrating the litigation of the claims in this particular forum; and (4) the manageability of the action as a class. Fed. R. Civ. P. 23(b)(3)(A)–(D). "This list is not exhaustive and other factors may be considered." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).

**B.    Discussion**

First, Plaintiff argues that decertification is inappropriate because (i) only compelling reasons or a significant intervening event justify reexamining certification and (ii) no such change in circumstances have occurred since the Court's certification orders. (Doc. No. 120 at 8–9.) Second, Plaintiff argues that the superiority element "remains" satisfied. (*Id.* at 10–14.)

### 1.  Appropriate Standard

As a threshold matter, Plaintiff's legal standard for decertification is incorrect. Plaintiff cobbles together a heightened standard of "compelling reasons" or a "significant intervening event" as required to justify decertification from two district court cases out of New York and one Louisiana *state* court case analyzing the *state* statutes on class certification. (*See id.* at 8 (relying on *Jermyn v. Best Buy Stores, L.P.*, 276 F.R.D. 167, 169 (S.D.N.Y. 2011)); *Gortat v. Capala Bros.*, No. 07 CIV. 3629 ILG SMG, 2012 WL 1116495 (E.D.N.Y. Apr. 3, 2012), *aff'd,* 568 F. App'x 78 (2d Cir. 2014); *Guidry v. Dow Chem. Co.*, 2016-0757 (La. App. 4 Cir. 3/1/17), 214 So. 3d 78, *writ denied,* 2017-0554 (La. 5/19/17), 221 So. 3d 78)).)[4] As Defendant aptly states: "No such standard exists." (*See* Doc. No. 123 at 2.)

In discussing the lack of changed circumstances, Plaintiff cites *Marlo v. United Parcel Serv., Inc.*, 251 F.R.D. 476, 480 (C.D. Cal. 2008), *aff'd,* 639 F.3d 942 (9th Cir. 2011), as "requiring that there must be changed circumstances to decertify a class." (Doc. No. 120 at 9.) Although the *Marlo* court found a change in circumstances had occurred in that case, nowhere does the *Marlo* court intimate, let alone explicitly state, that changed circumstances are anything beyond one of myriad considerations. *See Marlo*, 251 F.R.D. at 479–80. In fact, the *Marlo* court considered the in-depth review of evidence presented at summary judgment as raising concerns about predominance, manageability, and superiority. *Id.* at 480–81. In light of the evidence it reviewed, the Court found that the Rule 23 requirements of predominance and superiority were not met, and decertification was proper. *Id.* at 487–88.

Plaintiff fails to provide—and the Court is not aware of—any binding or persuasive

---

[4]    Plaintiff also cites to *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084 (6th Cir. 2016) as "emphasizing that the existence of another settlement alone does not automatically justify decertification, as the court must still enforce Rule 23's certification requirements." (Doc. No. 120 at 9.) However, as Defendant notes, "*Whitlock* says no such thing." (*See* Doc. No. 123 at 3.) Not only is *Whitlock* an out-of-circuit case, it addresses propriety of certification where that action itself had settled, not *another* action settled.

23-cv-00380-AJB-MMP

authority to support her conclusion that denial of class certification and decertification are different at all, let alone "are *very* different standards." (*See* Doc. No. 122 at 6.)

Moreover, based on Plaintiff's reliance on the Court's previous certification orders, it is clear that Plaintiff fundamentally misunderstands the Court's concerns regarding certification. As laid out in the Court's order denying Plaintiff's motion to stay parallel state actions, the initial finding of superiority was based on incomplete facts, Plaintiff's cursory analysis, and an express finding that there were "no indications that the putative class members have brought related litigation against Defendant or have any interest in asserting these claims on an individual basis." (Doc. No. 111 at 4–5.) With the express bases upon which the Court found superiority dissolved, the Court is questioning whether Plaintiff ever met her burden to demonstrate superiority in the first instance. (*See id.* at 6 ("Due to Plaintiff's misrepresentation through omission of facts that may have had an effect on whether Plaintiff met her burden to demonstrate certification is proper in this case, the Court declines to consider certification of the instant action as evidence of its comparatively advanced stage of litigation.").)

Applying Rule 23(b)(3) of the Federal Rules of Civil Procedure and Ninth Circuit precedent, the Court will turn to whether Plaintiff has met her burden of satisfying the superiority requirement. *See Small*, 122 F.4th at 1197.

### 2.    Superiority

There are four considerations set out by Rule 23(b)(3) as "pertinent" to a finding of superiority, all of which "court must consider" in determining superiority. *See Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir.), *opinion amended on denial of reh'g,* 273 F.3d 1266 (9th Cir. 2001). Of those four considerations, Plaintiff addresses one. (*See generally* Doc. Nos. 120; 122.) Specifically, Plaintiff argues that superiority is met because the manageability of the class in federal court weighs in favor of certification, along with two additional factors—the comparative stage of proceedings and scope of relief in the available forums—which Plaintiff gleans tenuously from *Kamm v. California City Dev. Co.*, 509 F.2d 205 (9th Cir. 1975) and *Katz v. Carte Blanche Corp.*, 496 F.2d

747 (3d Cir. 1974). (Doc. No. 120 at 10–14.) In considering the comparative stage of proceedings, Plaintiff argues the instant action is more advanced because it has been "hotly litigated" and is certified while *Diaz* and *Reese* "sat on their cases, stalling them out for several years[.]" (*Id.* at 10.) With regard to available relief, Plaintiff argues that the instant action "seeks and can secure remedies tailed to the claims asserted by the certified Class including those proffered by a damages model and theory which the *State Court* actions can." (*Id.* at 13.)

Defendant, on the other hand, argues that "the various parallel actions against Transdev render a class action neither the most efficient nor effective means to resolve the controversy." (Doc. No. 119 at 7.) Specifically, Defendant asserts (i) "*Lovejoy* will not completely resolve **any** of the parallel state court actions" while "the *Reese/Diaz* Settlement will completely resolve *Lovejoy* (and various of the other actions," (ii) "maintenance of Lovejoy's claims as a class action would be duplicative of *Reese/Diaz*" making it "inconsistent with the objectives of Rule 23(b)(3)," and (iii) "the various other class and individual actions are evidence that putative class members have an interest in controlling their own litigation." (*Id.* at 7–11 (emphasis in original).)

The Court will consider each of the Rule 23(b)(3) factors, along with the additional factors proffered by Plaintiff.

With respect to Rule 23(b)(3)(A), Plaintiff's initial motion for class certification (Doc. No. 46), renewed motion for class certification (Doc. No. 75), response to the Court's Order to Show Cause (Doc. No. 120), and reply (Doc. No. 122) do not address the class members' interests in individually controlling the prosecution or defense of separate actions. Moreover, nowhere in any filing on the docket does Plaintiff allege the amount of recovery for class members would be sufficiently low to militate in favor of certification. *Cf. Wolin*, 617 F.3d at 1175 ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."). Rather, the fact that there a numerous competing actions, some individual and some class, imply that *Lovejoy* class members have an interest in controlling

23-cv-00380-AJB-MMP

prosecution of their claims. *See Zinser*, 253 F.3d at 1191 ("[T]he existence of litigation indicates that some of the interested parties have decided that individual actions are an acceptable way to proceed, and even may consider them preferable to a class action.").

Turning more fully to the list of parallel actions, Plaintiff's arguments regarding the relative postures of the cases relies heavily on the fact that the instant action is *already* certified, which falls apart under the Court's current questioning of whether Plaintiff ever met her burden for superiority. The existence of other pending litigation that preexisted the instant action means that there is "a clear threat of multiplicity and a risk of inconsistent adjudications," which supports finding that class treatment of this action "may not be appropriate," especially considering that Plaintiff has already failed to enjoin the other suits. *See Zinser*, 253 F.3d at 1191; *see also Soares v. Flowers Foods, Inc.*, 320 F.R.D. 464, 485 (N.D. Cal. 2017) (finding "Plaintiffs have not carried their burden of showing that this factor supports the superiority of a class action" where "there is no indication that [three other parallel] cases are not moving ahead"). Moreover, "[a] class action would require a substantial expenditure of judicial time which would largely duplicate and possibly to some extent negate the work on the state level." *Kamm*, 509 F.2d at 212 (affirming the district court's denial of class certification).

To the extent Plaintiff asserts that the more detailed factual allegations of the instant complaint make the issues and claims different from the other actions, this line of argument is in direct contradiction to the entire thrust of Plaintiff's previous motion requesting this Court to stay the parallel state court actions. Certification of this action would not be superior but rather only create one more action, which would not aid in resolution of other actions. *See id.*; *see also Walter v. Leprino Foods Co.*, 670 F. Supp. 3d 1035, 1062 (E.D. Cal. 2023) (denying certification where the court found "that the maintenance of Walter's on-call break claims as a class action would be duplicative and inconsistent with the objectives of Rule 23(b)(3)").

Considering Rule 23(b)(3)(C), Plaintiff fails to provide any justification for concentration of litigation in this particular forum, especially considering that there are far

23-cv-00380-AJB-MMP

more parallel actions in Los Angeles County Superior Courts, which fall within the Central District of California. *See Zinser*, 253 F.3d at 1192.

With regard Rule 23(b)(3)(D), the Court agrees with Plaintiff that, based on the record before it, the instant action would be manageable as a class action considering Plaintiff's theory of liability, intent to use common evidence to prove liability, and intent to use Defendant's records to calculate individual damages. (*See* Doc. Nos. 46-1 at 32; 120 at 13–14.)

Finally, Plaintiff's two remaining arguments are not applicable considerations for whether certification is appropriate. Specifically, Plaintiff argues that she "would suffer severe prejudice as a result of decertification" after expending "significant resources and time [in] successfully seeking certification[.]" (Doc. No. 120 at 14.) Plaintiff cites to no authority, nor is the Court aware of any, where the expense in moving for certification is a consideration for whether certification is proper generally, to say nothing of determining whether a class action is a superior method of bringing the action. Plaintiff also accuses Defendant of engaging in a "reverse auction" despite being "'*compelled to negotiate*' the settlement with lead counsel[.]" (*Id.* (quoting *Salmonson v. Bed Bath & Beyond, Inc.*, No. CV 11-2293 SVW (SSX), 2012 WL 12919187, at *5 (C.D. Cal. Apr. 27, 2012)) (emphasis in Plaintiff's brief).) Defendant calls this allegation "a grossly unsupported misrepresentation of the history of the case and not relevant to the superiority analysis." (Doc. No. 123 at 6.) The Court agrees with Defendant that the argument is irrelevant to determining superiority.[5]

## C.   Conclusion

Because Plaintiff bears the burden of demonstrating the action satisfies Rule 23(b)(3), but Plaintiff fails to address all but one of the considerations provided by the Rule

---

[5]   Rather, this could be a consideration in federal court as to whether the settlement reached in *Reese* and *Diaz* warrants Court approval, which is the actual procedural posture and issues addressed by *Salmonson*, 2012 WL 12919187, at *5.

and because, based on the Court's analysis, only one factor weighs in favor of a finding of superiority, the Court finds Plaintiff has not carried her burden.[6] The Court orders all classes **DECERTIFIED**. With the classes decertified, the Court **DENIES as moot** Plaintiff's motion for approval of class action notice and notice plan. (Doc. No. 106.) The Order to Show Cause is **DISCHARGED**.

## III.    MOTION TO STAY

The Court turns next to Defendant's motion to stay the instant action pending final approval of the *Reese*/*Diaz* Settlement. (Doc. No. 110.)  Plaintiff filed an opposition (Doc. No. 114), to which Defendant replied (Doc. No. 117).

### A.    Legal Standards for Motions to Stay

#### 1.    *Landis* Stay

"A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). The Ninth Circuit has "identified three non-exclusive factors courts must weigh when deciding whether to issue a docket management stay: (1) the possible damage which may result from the granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law." *In re PG&E Corp. Sec. Litig.*, 100 F.4th 1076, 1085 (9th Cir. 2024) (quoting *Ernest Bock, LLC v. Steelman*, 76 F.4th 827, 842 (9th Cir. 2023)) (cleaned up). Although "[t]he District Court has broad discretion to stay proceedings as an incident to its power to control its own docket," *Clinton v. Jones*, 520 U.S. 681, 706 (1997), "concern for . . . judicial efficiency[] 'standing alone is not necessarily a sufficient ground

---

[6]    To be clear, it is not the existence of a potential settlement in *Reese* and *Diaz* that the Court relies on to justify decertification but Plaintiff's failure in the instant case to address the requisite factors and meet her burden.

to stay proceedings,'" *In re PG&E Corp. Sec. Litig.*, 100 F.4th at 1085 (quoting *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007)).

### 2.   *Colorado River* Stay

Pursuant to *Colorado River*, in rare cases, 'there are principles unrelated to considerations of proper constitutional adjudication and regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts.'" *United States v. State Water Res. Control Bd.*, 988 F.3d 1194, 1202 (9th Cir. 2021) (quoting *Colo. River Water Conservation Dist. v. United States* ("*Colo. River*"), 424 U.S. 800, 817 (1976)). "In the interest of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation,' a district court can dismiss or stay 'a federal suit due to the presence of a concurrent state proceeding.'" *Id.* (quoting *Colo. River*, 424 U.S. at 817–18). "Because of the virtually unflagging obligation of the federal courts to exercise the jurisdiction given to them, only the clearest of justifications will warrant a dismissal or stay." *Id.* (cleaned up).

"This court weighs eight factors to determine whether a *Colorado River* stay is justified: (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court." *Ernest Bock*, 76 F.4th at 836 (quoting *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 978–79 (9th Cir. 2011).

### B.   Appropriate Legal Standard

Defendant argues that a stay under either *Colorado River* or *Landis* is appropriate. (Doc. No. 110 at 15.) In arguing the latter, Defendant states that "[i]t is unsettled in the

23-cv-00380-AJB-MMP

Ninth Circuit whether a *Landis* stay may be sought as an alternative to a stay under *Colorado River*[;]" however, "the weight of authority in the Ninth Circuit and District Court supports the conclusion that a discretionary stay under *Landis* may be appropriate under some circumstances[,] . . . even where abstention under *Colorado River* is not." (*Id.* at 15 n.6.)

As noted by Plaintiff, the Ninth Circuit has in fact "explicitly rejected the use of *Landis* as an alternative to the *Colorado River* doctrine[.]" (Doc. No. 114 at 16 (citing *Ernest Bock, LLC v. Steelman*, 76 F.4th 827 (9th Cir. 2023).) In *Ernest Block*, the Ninth Circuit "join[e]d other circuits to expressly hold that the *Colorado River* factors control whether a stay can issue in favor of parallel state proceedings." *Ernest Bock*, 76 F.4th at 843 (collecting cases). Where "*Colorado River* does not support a stay [in favor of parallel state proceedings], neither can the district court's docket management authority," because to hold otherwise would "undermine the *Colorado River* doctrine." *Id.* at 842–43. The Court notes that none of the case law upon which Defendant relies for appropriateness of a *Landis* stay was decided after *Ernest Bock*. Accordingly, the Court finds that *Colorado River*, not *Landis*, to be applicable.

Having so determined, the Court turns next to parties' disagreement over the substance of that doctrine. Plaintiff states that:

> Under *Colorado River*, the party seeking a stay has the burden of showing why a stay is necessary pursuant to the eight-factor *Colorado River* test; additionally, as a threshold matter, the movant must also show that the stated actions at-issue are parallel, that exceptional circumstances exist that justify a stay, and that a stay will not harm or prejudice the non-moving party. Failing to make these threshold showings or inability to show that the *Colorado River* factors weigh heavily in favor of a stay, as here, require that the court deny the motion to stay.

(Doc. No. 114 at 7–8 (citing *Arctic Zero, Inc. v. Aspen Hills, Inc.*, No. 17-CV-00459-AJB-JMA, 2017 WL 5569850 (S.D. Cal. Nov. 20, 2017)).) Defendant asserts that Plaintiff misstates the standard for a stay under *Colorado River* by incorrectly adding two "threshold" questions that are not in fact threshold questions or supported by the case law.

(Doc. No. 117 at 2–3.)

First, the Court agrees with Defendant that Plaintiff incorrectly adds as a "threshold matter" that "the movant must also show that . . . a stay will not harm or prejudice the non-moving party." (Doc. No. 114 at 8.) Nowhere does prejudice to the non-moving party appear as a consideration in the *Colorado River* doctrine, let alone as a threshold issue; however, it is one of the factors considered in determining the appropriateness of a *Landis* stay. *See, e.g.*, *In re PG&E Corp. Sec. Litig.*, 100 F.4th at 1085.

Second, a showing that exceptional circumstances exist to justify a stay is not "a threshold matter" as described by Plaintiff, but rather the entire inquiry. *See R.R. St.*, 656 F.3d at 978 ("To decide whether a particular case presents the exceptional circumstances that warrant a *Colorado River* stay or dismissal, the district court must carefully consider both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise."). The only "threshold requirement for a *Colorado River* stay" is parallelism. *See Ernest Bock*, 76 F.4th at 838.

### C.    *Colorado River* Stay

The Court will analyze the threshold issue and then each of the applicable factors to determine whether a stay is appropriate under the *Colorado River* doctrine.[7] *See Ernest Bock*, 76 F.4th at 836.

### 1.    Parallelism of the Actions

Beginning with the threshold requirement, the Court turns to whether the instant action is "substantially similar" to the state court actions. *See Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989) (collecting cases). "[P]arallelism is necessary but not sufficient" for a *Colorado River* stay to issue. *Ernest Bock*, 76 F.4th at 838. However,

---

[7]    As there is no property at stake in this wage-and-hour class action, this factor is not applicable. *See R.R. St.*, 656 F.3d at 979 (holding the first factor "irrelevant in this case because the dispute does not involve a specific piece of property"); *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1368 (9th Cir. 1990) ("[M]oney is not the sort of tangible physical property referred to in *Colorado River*."); *see also Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1014 (N.D. Cal. 2016) (finding the first factor irrelevant in a wage-and-hour class action).

16

23-cv-00380-AJB-MMP

"exact parallelism . . . is not required. It is enough if the two proceedings are 'substantially similar.'" *Id.* (quoting *Nakash*, 882 F.2d at 1416).

In her opposition to the instant motion Plaintiff argues that "there are unassailable differentiations which do not render this case 'parallel' to the state court proceedings—including differentiations in factual allegations and legal issues." (Doc. No. 114 at 9.) Specifically, Plaintiff asserts the *Reese* and *Diaz* actions include different defendants (Transdev North America and Veolia Transportation), do not include any named plaintiffs who are bus driver/operator, do not include the same specific factual allegations about pre-loaded scheduled routes, and are generally more broadly alleged. (*Id.* at 9–11.) Finally, Plaintiff asserts that the actions cannot be parallel because the instant action is "at a much more advanced procedural posture than the state court cases." (*Id.* at 11–12.)

In response, Defendant notes that (i) Isaac Kharaud, Reese's co-plaintiff, was a bus operator for Defendant during the relevant time period, (ii) Defendant is the properly named defendant in both *Reese* and *Diaz*, and (iii) no case law supports the idea that broader class definition or differences in procedural posture bear on parallelism. (Doc. No. 117 at 5–6.)

As noted by Defendant, Plaintiff previously filed a "Motion for Stay of Parallel California State Court Proceedings," which sought the Court to stay the *Reese* and *Diaz* class and PAGA actions and the *Brown* PAGA action for the express reason that the state court actions were so "*parallel*" and "overlapping" as to "pose the threat that conflicting classes will be certified." (*See generally* Doc. No. 85-1.) There Plaintiff argued:

> This Court's Orders should be binding on all absent class members, but the parallel California state court proceedings threaten that members of the Lovejoy Class will also be participants to parallel labor law litigation covering this action's certified claims. Thus, the danger of duplicative or conflicting orders between this Court and the California state courts warrant an injunction enjoining the California plaintiffs from moving to certify or certify for settlement their putative classes.

(*Id.* at 13–14.) Because Plaintiff's proposed class definitions are "more surgically and intentionally crafted" than the more expansive class definitions proposed in the state court

17

23-cv-00380-AJB-MMP

actions, "the parallel California state court cases—none filed earlier than 2021—will seek to encroach on the Lovejoy Class to the extent that they will seek to certify classes that are not limited to persons that have opted out of the Lovejoy Class pursuant to this Court's Orders." (*Id.* at 12.) As such, Plaintiff asserted the "Court should issue an injunction thus carefully tailored to prevent the plaintiffs in the parallel state court actions from moving to certify or certify for settlement purposes classes of Defendant Transdev's California employees—unless the state plaintiff putative class representative's motions specifically exclude Lovejoy's Class's absent members from any requested certification order." (*Id.*)

Based on Plaintiff's admissions in her motion to stay, Defendant's moving papers at issue here, and the Court's review of the relevant complaints, the Court finds the instant action to "substantially similar" to the state court actions. *See Nakash*, 882 F.2d at 1416. In fact, the proposed classes in *Reese* and *Diaz* would subsume the proposed class in the instant action. The potential class period precedes Plaintiff's by approximately two years and continues to the present. The causes of actions pled in *Reese* and *Diaz* are the same with two differences: (i) the *Reese* and *Diaz* actions include an additional claim for failure to reimburse business expenses not alleged by Plaintiff; and (ii) Plaintiff asserts a conversion of wages cause of action not pled by *Reese* and *Diaz* but that is derivative of her other claims. Despite Plaintiff's assertions that the specificity of allegations must be the same, Plaintiff points to no case law—nor is the Court aware of any—supporting such proposition. Because the *Reese* and *Diaz* actions subsume the instant action in class definition, period, and claims, the Court finds that the threshold requirement of parallelism is met.

### 2.    Inconvenience of the Federal Forum

"[T]he second factor addressing inconvenience of the federal forum is neutral [where] the state and federal courthouses are less than 200 miles apart." *Mendocino Ry. v. Ainsworth*, 113 F.4th 1181, 1188 (9th Cir. 2024), *cert. denied sub nom. Mendocino R. v. Huckelbridge*, No. 24-986, 2025 WL 2823702 (U.S. Oct. 6, 2025). The state court actions at issue here were filed in Los Angeles Superior Court, in the County of Los Angeles,

23-cv-00380-AJB-MMP

which is less than 200 miles from this district. Further, there is no other indications that the federal forum is inconvenient. *See Ernest Bock*, 76 F.4th at 837 n.12. Accordingly, this factor is neutral.

### 3.    Desire to Avoid Piecemeal Litigation

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *R.R. St.*, 656 F.3d 966, 979 (9th Cir. 2011) (quoting *Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988)). "The mere possibility of piecemeal litigation does not constitute an exceptional circumstance." *Id.* "Instead, the case must raise a 'special concern about piecemeal litigation,' which can be remedied by staying or dismissing the federal proceeding." *Id.* (quoting *Madonna*, 914 F.2d at 1369).

Defendant argues that "[t]his factor is met when a statewide class settlement would wipe out the federal class action," as is the possibility here. (Doc. No. 110 at 20–21 (relying on *Taylor v. AlliedBarton Sec. Servs. LP*, No. 1:13-CV-01613-AWI, 2014 WL 1329415, at *11 (E.D. Cal. Apr. 1, 2014); *Brown v. Abercrombie & Fitch Co.*, No. CV141242JGBVBKX, 2015 WL 12778338, at *5 (C.D. Cal. June 24, 2015); *Franco v. Cent. Transp. LLC*, No. EDCV191464JGBSPX, 2020 WL 11626531, at *4 (C.D. Cal. Oct. 22, 2020); *Cohen v. Peloton Interactive, Inc.*, No. CV 22-01425-MWF (EX), 2022 WL 22883465, at *3 (C.D. Cal. May 2, 2022)).)

Plaintiff asserts that this factor is "not at issue" because "staying this Action to avoid piece meal litigation cuts against the realities of the procedural history that this Action provides, as this case is much more advanced and scheduled for trial far before any of the state cases." (Doc. No. 114 at 13.) No further explanation or authority is provided.

It is unclear to the Court what Plaintiff's argument with regard to this factor is or upon what legal basis it is made. Rather, the Court finds that proceeding with this action, which is subsumed in the class and claims addressed by the *Reese/Diaz* Settlement, would require the parties to engage in duplicative discovery, make duplicative filings, and cause this Court and the state court to make rulings on identical issues in the future. *See, e.g.,*

23-cv-00380-AJB-MMP

*Franco*, 2020 WL 11626531, at *4; *cf. Higginbottom v. Dexcom, Inc.*, 744 F. Supp. 3d 1058, 1077 (S.D. Cal. 2024), *motion to certify appeal denied,* No. 24-CV-0195-WQH-BLM, 2024 WL 4547017 (S.D. Cal. Oct. 22, 2024) (finding this factor does not support a stay where the issues raised in the state court action do not subsume the issues raised in federal court).

Although this factor alone is insufficient to warrant a *Colorado Stay* without finding the case raises special concerns, the Court finds that this factor weighs in favor of staying the instant action.

### 4.    Order in Which Forums Obtained Jurisdiction

The fourth factor concerns which court obtained jurisdiction first. "In determining the order in which the state and federal courts obtained jurisdiction, district courts are instructed not simply to compare filing dates, but to analyze the progress made in each case 'in a pragmatic, flexible manner with a view to the realities of the case at hand.'" *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 843 (9th Cir. 2017) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983)).

Defendant argues this factor weighs in favor of a stay because "[s]ubstantial progress has been made in *Reese/Diaz*, including written and deposition discovery, as well as two mediations before a well-respected wage and hour mediator, and, most importantly, a pending settlement." (Doc. No. 110 at 22.) "Because *Reese/Diaz* has settled and is nearing conclusion, it has far outpaced *Lovejoy*, in which there have been no discussions about classwide settlement." (*Id.*) Defendants point to multiple cases where the district court found that a pending settlement in the parallel actions weighed in favor of granting a *Colorado River* stay. (*Id.* (citing *Taylor*, 2014 WL 1329415, at *11; *Franco*, 2020 WL 11626531, at *5; *Cohen*, 2022 WL 22883465, at *1; *Adedapoidle-Tyehimba v. Crunch LLC*, No. C 13-225 SI, 2013 WL 1890718, at *4 (N.D. Cal. May 3, 2013)).)

In opposition, Plaintiff asserts that the instant action, through vigorous litigation, is far more advanced because Plaintiff fought for discovery to be produced, for a site visit to occur, and for certification to be achieved. (Doc. No. 114 at 14–15.) In contrast, Plaintiff

23-cv-00380-AJB-MMP

argues, the *Reese* and *Diaz* actions were "voluntarily" "stall[ed] . . . out for four and three years respectively." (*Id.* at 15.) Plaintiff relies on a single case, asserting that "[i]n *Sherman*, the court denied the stay requested when there was a proposed settlement in parallel state action and there was certification in the federal action." (Doc. No. 114 at 14 (analyzing *Sherman v. CLP Res., Inc.*, No. CV 12-8080-GW(PLAX), 2018 WL 5899494, at *2 (C.D. Cal. Aug. 9, 2018)).)

However, Plaintiff misrepresents *Sherman*, omitting the key details that make it completely inapposite to the instant case. (*See* Doc. No. 117 at 7 (addressing that Plaintiff "fails to address the proper context of that case").) As background, the *Sherman* court previously stayed two related federal cases, one of which had achieved certification two years prior, after the defendants notified the court that a class settlement had been reached in an overlapping state court. *Sherman*, 2018 WL 5899494, at *1–2. After the stay well exceeded 900 days without the state court preliminarily approving the settlement before it, the *Sherman* court lifted the stay in both federal cases. *Id.* at *2. The defendants moved the *Sherman* court to reimpose the stay, which the court found inappropriate considering the extensive delay and unlikelihood that the state court case would resolve the federal cases. *Id.* at *5. If anything, *Sherman* supports the proposition that a certified federal action may be stayed due to the parties in a related state class action reaching a preliminary settlement agreement.

Considering the cases proffered by the parties and the facts that the *Reese* and *Diaz* actions were filed prior to the instant action, have progressed to settlement, and that the instant action—though vigorously litigated—is not certified, the Court finds that this factor weighs in favor of a stay.

### 5.    Rule of Decision

The fifth factor concerns whether federal law or state law provides the rule of decision on the merits. "[A]lthough 'the presence of federal-law issues must always be a major consideration weighing against surrender,' the 'presence of state-law issues may weigh in favor of that surrender' only 'in some rare circumstances.'" *Madonna*, 914 F.2d

23-cv-00380-AJB-MMP

at 1370 (quoting *Moses H. Cone*, 460 U.S. at 26).

Defendant argues that, because "all claims are brought under California state law," this factor weighs in favor of issuing a stay. (Doc. No. 110 at 22–23.) Plaintiff fails to address this factor. (*See generally* Doc. No. 114.)

Federal district courts are "fully capable of deciding" and in fact routinely handle state wage-and-hour claims of this type. *Cf. Seneca Ins. Co.*, 862 F.3d at 844 ("Cases implicating only "routine issues of state law—misrepresentation, breach of fiduciary duty, and breach of contract—which the district court is fully capable of deciding" do not entail "rare circumstances" counseling in favor of abstention.") (quoting *Madonna*, 914 F.2d at 1370). Defendant fails to identify any specific issue that makes this case the rare circumstance that would weigh in favor of a stay. Regardless, some district courts have found that state law claims as those alleged here "favor surrendering federal jurisdiction because wage and hour laws constitute areas of traditional state regulation." *Cohen*, 2022 WL 22883465, at *4.

Considering that California provides the rule of decision, but rare circumstances are absent, this factor weighs only somewhat in favor of a stay. *See, e.g.*, *Jackson v. Marten Transp., Ltd.*, No. 5:24-CV-02368-AH-(DTBX), 2025 WL 342083, at *5 (C.D. Cal. Jan. 30, 2025) ("Because Plaintiff is not pursuing any federal claims, factors five and six also support a stay."); *Jolly v. Intuit Inc.*, 485 F. Supp. 3d 1191, 1204 (N.D. Cal. 2020) (holding this factor weighs in favor of a stay where state law governs); *Guild Mortg. Co. LLC v. Flowers*, 768 F. Supp. 3d 1166, 1175–76 (W.D. Wash. 2024), *appeal dismissed,* No. 24-5939, 2025 WL 2793626 (9th Cir. Apr. 9, 2025) (finding the same where "California state law will predominate").

### 6. Adequacy of State Court Proceedings

"The adequacy factor looks to whether the state court might be unable to enforce federal rights." *Seneca Ins. Co.*, 862 F.3d at 845; *see also Guild Mortg. Co.*, 768 F. Supp. 3d at 1176 ("This factor does not evaluate the competency of the state judiciary, but instead considers whether the state court lacks power to provide the remedy the plaintiff seeks.").

23-cv-00380-AJB-MMP

If the state court cannot "adequately protect the rights of the federal litigants[,] . . . 'a district court may not stay or dismiss the federal proceeding.'" *Mendocino Ry.*, 113 F.4th at 1190 (quoting *R.R. St.*, 656 F.3d at 981).

Plaintiff argues the *Reese* and *Diaz* actions do "not adequately represent the claims of the federal *Lovejoy* classes" because (i) "[n]othing on the record suggests that Plaintiff's class of bus drivers has been included, developed or investigated in the *Diaz* and *Reese* actions" and (ii) a stay would "deprive Plaintiff of the ability to assess the validity of the yet undisclosed terms of the putative settlement in the *Diaz* and *Reese* matters." (Doc. No. 114 at 15.)

In reply, Defendant asserts that "the proper vehicle to oppose the adequacy of the class representatives or their counsel is in the state court action." (Doc. No. 117 at 8.) Because "Lovejoy is a putative settlement class member . . . she will be able to participate in the settlement approval process and to challenge any aspects of the *Reese*/*Diaz* settlement she chooses." (*Id.*)

The Court agrees with Defendant that "Plaintiff [has] not identif[ied] any reason that the state court decision in *Reese*/*Diaz* will fail to protect her interests." (*See* Doc. No. 110 at 23.) In fact, "there is no question that the state court has authority to address the rights and remedies at issue in this case." *R.R. St.*, 656 F.3d at 981. Because Plaintiff only brings state law claims that are subsumed by the *Reese* and *Diaz* actions, California state court is an adequate vehicle to protect Plaintiff's rights. There are no *federal* rights at issue in the instant litigation. As such, the Court has no concerns about the adequacy of the state court proceedings to enforce Plaintiff's rights. *See Seneca Ins. Co.*, 862 F.3d at 845; *see also Jackson*, 2025 WL 342083, at *5 ("Because Plaintiff is not pursuing any federal claims, factors five and six also support a stay.").

### 7.    Desire to Avoid Forum Shopping

The seventh factor concerns whether either action was initiated in a specific forum in an attempt to receive a tactical advantage. *See Nakash*, 882 F.2d at 1417. "Forum shopping refers to the practice of choosing the most favorable jurisdiction or court in which

23-cv-00380-AJB-MMP

a claim might be heard." *R.R. St.*, 656 F.3d at 981 (citation and internal punctuation omitted). "To avoid forum shopping, courts may consider 'the vexatious or reactive nature of either the federal or the state litigation.'" *Id.* (quoting *Moses H. Cone*, 460 U.S. at 17 n.20). "In the *Colorado River* context, th[e Ninth] Circuit has held that forum shopping weighs in favor of a stay when the party opposing the stay seeks to avoid adverse rulings made by the state court or to gain a tactical advantage from the application of federal court rules." *Madonna*, 914 F.2d at 1371.

Defendant argues that, because Plaintiff pleads no federal claims, Plaintiff "appears to have chosen her forum to gain a tactical advantage of avoiding the first-filed rule, from the application of federal court rules, and/or by seeking expedited scheduling timelines. (Doc. No. 110 at 25.) "[I]f Plaintiff can avoid a stay by choosing federal court and moving more quickly to certification to defeat settlement in an earlier-filed state case," then this Court's "excercis[e] of jurisdiction would *encourage* forum shopping[.]" (Doc. No. 117 at 8–9 (emphasis in original).)

Plaintiff asserts that she and counsel "were not aware of" either the *Reese* and *Diaz* actions "until well after she filed her case" and that she filed in federal court because she "did not want to waste time with filing in state court and then being removed" considering that CAFA jurisdiction appeared present. (Doc. No. 114 at 16.) Based on those assertions, Plaintiff concludes "[t]here is no forum shopping occurring here." (*Id.*)

Although the federal action was filed later and is substantially similar to the state actions, there is no evidence in the record from which to conclude Plaintiff engaged in forum shopping. *See, e.g.*, *City of Hollywood Firefighters' Pension Sys. v. Wells Fargo & Co.*, No. 23-CV-02445-JST, 2024 WL 2868149, at *7 (N.D. Cal. June 5, 2024). The strategic decision to file in federal court to avoid the delay removal would have is, alone, not a benefit that constitutes forum shopping, let alone indicative of a vexatious or reactive nature of this later-filed action. Accordingly, the Court finds this factor is neutral.

///

///

### 8.    Resolution of Issues Before the Federal Court

"[A] district court may enter a *Colorado River* stay order only if it has 'full confidence' that the parallel state proceeding will end the litigation." *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993) (*Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 277 (1988)).

As discussed *supra*, the instant action is subsumed in the *Reese* and *Diaz* actions. *See supra* § III.C.1. Resolution of *Reese* and *Diaz* "will fully resolve every claim certified in *Lovejoy*, leaving this Cout with nothing further to adjudicate[.]" (Doc. No. 110 at 18.) "The state and federal proceedings here are sufficiently parallel such that there is no substantial doubt the State Action will completely resolve the Federal Action." *Mendocino Ry.*, 113 F.4th at 1192. Accordingly, this factor weighs in favor of a stay.

### 9.    Balancing of the Factors

The Court finds that one factor is not applicable, two factors are neutral, and the remaining five factors favor a stay to varying degrees. As such, the Court **GRANTS** Defendant's motion to stay pursuant to the *Colorado River* doctrine.

## IV.    REQUESTS FOR JUDICIAL NOTICE

Defendant requests the Court take judicial notice of the following court records which Defendant filed in support of its response to the Court's Order to Show Cause, its motion to stay the instant action, and the corresponding reply in support of that motion:

1.    Compl., *Reese v. Veolia Transp. Inc.*, No. 21STCV29413 (Cal. Super. Ct. Aug. 10, 2021);

2.    Compl., *Diaz v. Transdev Servs., Inc.*, No. 22STCV32496 (Cal. Super. Ct. Oct. 4, 2022);

3.    Compl., *Diaz v. Transdev Servs., Inc.*, No. 22STCV38405 (Cal. Super. Ct. Dec. 9, 2022);

4.    Order re: Related Cases, *Reese v. Veolia Transp. Inc.*, No. 21STCV29413 (Cal. Super. Ct. Jan. 3, 2024);

5.    Compl. for Enforcement under PAGA, *Brown v. Transdev Servs., Inc.*, No. 23AHCV02160 (Cal. Super. Ct. Sept. 18, 2023); and

6.    Joint Notice of Settlement, *Reese v. Veolia Transp. Inc.*, No.

21STCV29413 (Cal. Super. Ct. Sept. 30, 2025) (lead case) and *Diaz v. Transdev Servs., Inc.*, No. 22STCV32496 (Cal. Super. Ct. Sept. 30, 2025);

7.    Ex Parte App. to Intervene, *Reese v. Veolia Transp. Inc.*, No. 21STCV29413 (Cal. Super. Ct. May 3, 2024);

8.    PAGA Compl., *Salaam v. Transdev Servs., Inc.*, No. 37-2021-00008373-CU-OE-CTL (Cal. Super. Ct. Feb. 26, 2021);

9.    Class Action Compl., *Ganther v. Transdev Servs., Inc.*, No. 22CV000632 (Cal. Super. Ct. June 8, 2022);

10.    Representative Action Compl., *Ganther v. Transdev Servs., Inc.*, No. 22CV001338 (Cal. Super. Ct. Nov. 3, 2022);

11.    Class Action Compl., *Arney, et al. v. Transdev Servs., Inc.*, No. 3:23-cv-02287 (N.D. Cal. May 17, 2023);

12. Compl., *Arney, et al. v. Transdev Alt. Servs., Inc.*, No. CU25-10351 (Cal. Super. Ct. Nov. 5, 2025);

13.    Class Action Compl., *Burkett v. Transdev Servs., Inc.*, No. CU25-02303 (Cal. Super. Ct. Mar. 11, 2025);

14.    First Am. Class Action Compl., *Burkett v. Transdev Servs., Inc.*, No. CU25-02303 (Cal. Super. Ct. Apr. 9, 2025); and

15.    Class & Representative Action Compl., *Smith v. Transdev Servs., Inc.*, No. VCU323993 (Cal. Super. Ct. July 22, 2025).

(*See* Doc. Nos. 110-2; 117-2; 119-2.)

Plaintiff requests the Court take judicial notice of the following court records from the parallel state court actions which Plaintiff filed in support of her opposition to Defendant's motion to stay:

1.    First Am. Class Action Compl., *Reese v. Veolia Transp. Inc.*, No. 21STCV29413 (Cal. Super. Ct. March 8, 2023);

2.    First Am. Class Action Compl., *Diaz v. Transdev Servs., Inc.*, No. 22STCV32496 (Cal. Super. Ct. Feb. 20, 2024);

3.    First Am. PAGA Representative Action Compl., *Diaz v. Transdev Servs., Inc.*, No. 22STCV38405 (Cal. Super. Ct. Feb. 20, 2024);

4.    Docket Sheet, *Reese v. Veolia Transp. Inc.*, No. 21STCV29413 (Cal. Super. Ct. Retrieved Dec. 1, 2025);

5.    Docket Sheet, *Diaz v. Transdev Servs., Inc.*, No. 22STCV32496 (Cal. Super. Ct. Retrieved Dec. 1, 2025); and

26

6.  Docket Sheet, *Diaz v. Transdev Servs., Inc.*, No. 22STCV38405 (Cal. Super. Ct. Retrieved Dec. 1, 2025).

(*See* Doc. No. 114-1.)

Finally, in its reply in support of the motion to stay, Defendant requests the Court take judicial notice of the following public record:

1.  Amended Statement by Foreign Corporation Transdev Services, Inc. filed with the California Secretary of State on August 1, 2014.

(*See* Doc. No. 117-2.)

At the request of a party, a court must take judicial notice of a fact that is "not subject to reasonable dispute, so long as the court is supplied with the necessary information. Fed. R. Evid. 201(b), (c)(2). A fact is "not subject to reasonable dispute where it "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court may take judicial notice of court filings and matters of public record. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *see also Marsh v. S.D. Cnty.*, 432 F. Supp. 2d 1035, 1043 (S.D. Cal. 2006) ("A court may take judicial notice of the existence of matters of public record, such as a prior order or decision[.]"). "However, while the authenticity and existence of a particular order, motion, pleading or judicial proceeding, which is a matter of public record, is judicially noticeable, veracity and validity of its contents are not." *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 940 (S.D. Cal. 2024) (internal punctuation and citation omitted).

Accordingly, the Court **GRANTS** each request by the parties pursuant to Rule 201(c)(2) of the Federal Rules of Evidence and takes judicial notice of the identified state court records and the public record filed with California Secretary of State.

## V.  CONCLUSION

Based on the foregoing, the Court hereby **ORDERS**:

1.  The instant action is **DECERTIFIED** for all classes and the Order to Show Cause is **DISCHARGED**.

23-cv-00380-AJB-MMP

2.      Plaintiff's motion for approval of the class action notice and notice plan (Doc. No. 106) is **DENIED as moot**.

3.      Defendant's motion to stay the instant action is **GRANTED**.

4.      The instant action is **STAYED**, pending resolution *Reese v. Veolia Transp.*, No. 21STCV29413 (Cal. Super. Ct.).

5.      **No later than <u>April 27, 2026</u>, and every 60 days thereafter**, the parties must file a joint status report addressing the progress of the settlement approval process in *Reese v. Veolia Transp.*, No. 21STCV29413 (Cal. Super. Ct.).

**IT IS SO ORDERED.**

Dated:  January 27, 2026

Hon. Anthony J. Battaglia
United States District Judge

23-cv-00380-AJB-MMP